Harrison Parker, Appellant, v. Weymouth Kirkland, Appellee.

Gen. No. 39,804.

Opinion filed January 19, 1939.

James C. Byrne, of Chicago, for appellant.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago, for appellee; Howard Ellis, J. B. Martineau and George L. Haggard, all of Chicago, of counsel.

Mr. Justice Friend delivered the opinion of the court.

Harrison Parker appeals from an order of the superior court dismissing for insufficiency his amended complaint, wherein he alleged that Weymouth Kirkland, defendant, maliciously and falsely uttered and published certain statements or remarks derogatory to Parker's character and reputation, while acting as counsel for the Tribune company in defense of a complaint brought by Parker before the board of appeals of Cook county, seeking a review of the capital stock assessment against the Tribune for the year 1935.

The amended complaint consists of two counts, the first of which alleged in substance that in the course of the hearing before the board, which is characterized as "a purely administrative body," and "not a quasi judicial body or a judicial body," and in the presence of some five hundred persons, Kirkland as attorney for the Tribune in the matter then on hearing before the board, maliciously and falsely assailed Parker's

character, integrity, honesty and moral qualities, by speaking of him as a "contemptible falsifier," whose sole purpose in filing the complaint "is of blackmailing the Chicago Tribune"; that Parker had a "diarrhea of the mouth," is a "rat," a "dirty rat," and "ought to be taken for a ride."

The second count of the complaint is more specific, in that it sets forth the proceedings before the board and incorporates as exhibits both Parker's complaint and a stenographic report of the proceedings, showing the statements or remarks made by Kirkland in their connection with the subject matter of the hearing, and alleging that the remarks were not germane to questions or issues then pending before the board; and it is averred that by reason of the utterances of these false, scandalous and malicious statements by Kirkland, Parker's business and reputation for honesty, integrity and character were greatly injured; wherefore he seeks judgment against Kirkland in the sum of $100,000.

The hearing before the board of appeals was had on June 3, 1936. There were present Messrs. Whalen and Drymalski, members of the board, Parker, acting *pro se,* Kirkland and Leslie A. Hodson, a lawyer associated with Kirkland in his firm, acting as counsel for the Tribune, and J. E. Battle, appearing for John S. Clark, tax assessor of Cook county. The hearing was predicated on Parker's sworn complaint and the Tribune's answer thereto. Parker appeared before the board as a taxpayer, acting on his own behalf and all other taxpayers, and in his complaint he alleged that the assessor of Cook county, John S. Clark, was in a conspiracy with the Tribune company, "to pass on to the tax distressed bungalow owners, the debt harassed farmers, and day laborers the taxes that should be imposed on and paid by the provisions of the Illinois Constitution, in derogation of the right reposed in the Illinois

legislature to make the tax laws, in defiance of the rules and regulations made and promulgated by the Illinois Tax Commission that have never been repealed, rejected, or modified either by the Illinois Tax Commission, or by any Court, in violation of the duty imposed upon him by law and his oath of office, the said John S. Clark has set up a new tax that he brazenly dubs a capital stock tax in order to hide the fraud that exists in the Cook County Assessor's office to soak the poor, the needy and defenseless for the benefit of the opulent and politically powerful Tribune Company that for sixty odd years has masqueraded as a 'Free Press' in order to cover the fact that it has enriched its opulent, greedy and selfish stockholders by cheating and defrauding the State of Illinois of money that was and is due to the State as capital stock taxes ; . . . .''

It was Parker's contention that Clark had entirely *omitted* assessing the Tribune for capital stock tax by not following Rule 11 of the tax commission,* and that his failure to assess a capital stock tax against the Tribune was not the result of mistake or error of judgment, but was in pursuance of a conspiracy and ''done maliciously, fraudulently and with malice aforethought, and for the purpose of favoring the said Tribune Company.'' Parker contended that if the assessor had

---

* This contention was subsequently determined adversely to Parker in an opinion filed in *People ex rel. Parker v. Board of Appeals of Cook County,* 367 Ill. 559. An appeal had there been perfected from an order of the circuit court dismissing Parker's complaint for a writ of mandamus, and it was held among other things that under Rule 11 of the State tax commission, an assessment of capital stock is in reality an assessment upon the intangible surplus over and above the assessment levied on the tangible property of the corporation, and where the value of a corporation's stock does not exceed the value of its tangible property, there is no basis for an assessment of capital stock as such. Subsequently Parker filed a second petition for mandamus, wherein the figures in his complaint had been modified and the allegations broken down so that they were set out by various years. In a recent opinion filed by the Supreme Court in *People ex rel. Parker v. Whealan,* 370 Ill. 243, the court held that ''there have never been any allegations that the assessments complained of were lacking in uniformity, as compared with the assessments made upon other similar property,'' and the judgment of the circuit court dismissing the complaint for mandamus was again affirmed.

followed Rule 11, the legal capital stock tax of the Tribune would have been approximately $2,000,000 in addition to the $95,000 personal property tax which he described as a "mere pittance of a tax." He asked the board to make the capital stock assessment defined in the statutes and to fix the tax thereon pursuant to the State laws and Rule 11 of the tax commission, and to determine the fair cash value of the Tribune's capital stock, or in the alternative that the board direct the assessor so to do.

The Tribune answered Parker's sworn complaint, denying that it had received any preference over other taxpayers, and averred that the assessment had been uniformly and fairly made; it pointed out that certified copies of its balance sheets and other books and records had been submitted to the assessor; denied all allegations of conspiracy, characterizing them as "contemptible falsehoods," and averred that Parker was filing the complaint in bad faith and in an attempt to blackmail the Tribune into making a financial settlement of a libel suit which Parker had filed against the Tribune. In this connection it was averred that in the previous year Parker had complained of the Tribune company's capital stock assessment for the years 1873 to 1934 inclusive; that upon hearing of the former complaint in 1935 it was shown that Parker had filed his complaint solely for the purpose of compelling the Tribune to settle the libel suit which he had pending against it, and was still pending, and that the present complaint had been lodged as part of his common scheme to blackmail the Tribune into settling the libel suit; and it was suggested in the answer that the record as to Parker's attempted blackmail made before the board during 1935 be incorporated in the proceedings then before the board.

It has long been the well recognized rule of law that proceedings in the regular course of justice are priv-

ileged. Under the English decisions, statements of counsel in the course of a judicial proceeding are held to be absolutely privileged (*Astley v. Younge,* 2 Burr 807; *Munster v. Lamb,* 11 Q. B. D. 588), and this privilege "attaches to all proceedings of, and to all evidence given before, any tribunal which by law, though not expressly a court, exercises judicial functions— that is to say has power to determine the legal rights and to effect the status of the parties who appear before it. . . . It is not necessary that the tribunal should have all the powers of an ordinary court; e. g., the proceedings will still be absolutely privileged although the tribunal cannot compel the attendance of witnesses, or has no power to administer an oath, provided it can discharge its judicial duties without such powers." (Odgers on Libel and Slander, 6th ed., p. 195, citing cases.) In America the same privilege protects counsel "not merely in regular courts of justice but in all inquiries before magistrates, referees, municipal and ecclesiastical bodies" (Newell on Slander and Libel, 4th ed., sec. 363, p. 397), but subject to the qualification that the statements must be pertinent and applicable to the subject of inquiry and made in courts or tribunals having jurisdiction of the subject, and power to hear and decide the matter of complaint, and in such case the motive of counsel in using the language is immaterial. (*Hoar v. Wood,* 44 Mass. 193; *Marsh v. Ellsworth,* 50 N. Y. 309; *Jennings v. Paine,* 4 Wis. 358; *Lawson v. Hicks,* 38 Ala. 279; *Rice v. Coolidge,* 121 Mass. 393.) Subject to the restriction that a party or counsel shall not avail himself of his situation, to gratify private malice by uttering slanderous expressions, either against a party, witness or third person, which have no relation to the cause or subject matter of the inquiry, our courts have uniformly held that on the whole, for the public interest, and best calculated to subserve the purposes of justice,

counsel ought to be allowed full freedom of speech in conducting causes and advocating and sustaining the rights of their constitutents, unimpaired by numerous and refined distinctions. (*Hoar v. Wood,* 44 Mass. 193.) Said the court in that case (p. 194): "Great latitude of remark and observation is properly allowed to all persons, both parties and counsel, in the conduct and management of all proceedings in the course of the administration of justice. It is for the interest of the public, that great freedom be allowed in complaints and accusations, however severe, if honestly made, with a view to have them inquired into, to have offenses punished, grievances redressed, and the laws carried into execution. And this extends not merely to regular courts of justice, but to all inquiries before magistrates, referees, municipal and ecclesiastical bodies; and they are only restrained by this rule, viz., that they shall be made in good faith, to courts or tribunals having jurisdiction of the subject, and power to hear and decide the matter of complaint, or accusation, and that they are not resorted to, as a cloak for private malice." In Illinois this doctrine was approved in the early case of *Spaids v. Barrett,* 57 Ill. 289, wherein the court, in affirming the action of the trial court in sustaining a demurrer to a count in slander, said (p. 291): "It is nothing more than a count in slander, based upon an alleged libelous affidavit, filed in a legal proceeding. Whatever is said or written in such proceeding, pertinent and material to the matter in controversy, is privileged, and no action can be maintained upon it." *Strauss v. Meyer,* 48 Ill. 385, and *McDavitt v. Boyer,* 169 Ill. 475, are to the same effect.

Counsel are in substantial agreement that this is the settled rule applicable to judicial tribunals. We held in *Kimball v. Ryan,* 283 Ill. App. 456, that it also applies to hearings "before bodies whose duties are *quasi* judicial, boards, or commissions." Plaintiff

argues, however, that it does not apply to proceedings before the board of appeals, because that body is neither judicial nor *quasi* judicial in character, but purely an administrative body. The question therefore arises whether the board of appeals is a *quasi* judicial body. Considerable light is thrown on this inquiry by reference to the duties of the board as defined by the statute. (Ill. Rev. Stat. 1937, ch. 120, secs. 31–43, pars. 310–322 [Jones Ill. Stats. Ann. 119.352–119.374].) Though a branch of the executive department of the government, the board of appeals, which succeeded the board of review, nevertheless exercises *quasi* judicial powers. It is vested with the duty, when complaint is made, to review the entire assessment of any taxpayer or any part thereof and correct the same as shall appear to them to be just. The statute defines the requisites of a proper complaint, provides that hearings shall be public, and held pursuant to notice to the taxpayer; that after hearing the board shall enter orders of record, and shall set forth in writing its reasons for a revision of the assessment. The statute grants the board particular powers to summon witnesses and administer oaths in connection with its hearings, and to find witnesses who do not appear or who refuse to testify, guilty of a misdemeanor and to subject them to a fine of $500. If a complaint charges that the property is wrongfully omitted and the board so finds, after hearing, it is required to direct the assessor to assess such property. Unlike an assessing body, the board can only act upon evidence adduced at the hearing. It cannot itself make an assessment, but only reviews assessments. In this respect it is an appellate tribunal of limited jurisdiction and its functions in the matter of reviews are judicial or *quasi* judicial only. (*Jarman v. Schuyler County Board of Review*, 345 Ill. 248, 253; *Allwood v. Cowen*, 111 Ill. 481; *People v.*

*Concordia Fire Ins. Co.,* 350 Ill. 265; *People ex rel. Harding v. Atwater,* 362 Ill. 546.)

34 Corpus Juris 1180, sec. 5, defines a *quasi* judicial duty as one lying in the judgment or discretion of an officer other than a judicial officer, and in drawing the distinction between acts that are *quasi* judicial and those that are purely judicial, says that where a power vests in a judgment or discretion, so that it is of a judicial character or nature, but does not involve the exercise of the functions of a judge, or is conferred upon an officer having no authority of a judicial character, the expression used is generally *"quasi* judicial." It is further said that "a *quasi* judicial power is one imposed upon an officer or a Board involving the exercise of discretion, judicial in its nature, in connection with, and as incidental to, the administration of matters assigned or entrusted to such officer or board," and that a function is deemed *"quasi* judicial" when such officer is charged with looking into and acting upon facts, not in a way which the law specifically directs, but after a discretion in its nature judicial; and that *quasi* judicial functions are those which lie midway between the judicial and ministerial ones.

In determining whether proceedings before various types of boards and commissions are privileged, the courts of Illinois and other States have from time to time defined the character of tribunals similar to the board of appeals, and have held them to be *quasi* judicial for the purpose of extending privilege to counsel and other interested parties. In *Kimball v. Ryan,* 283 Ill. App. 456, in passing upon proceedings had before the board of election commissioners, we said (p. 463) "It is the law that a person is not subject to be sued for slander or libel for defamatory statements in papers filed in a judicial proceeding or before bodies whose duties are *quasi* judicial, boards or commissions," citing *Krumin v. Bruknes,* 255 Ill. App. 503.

In so holding, we pointed out that the board of election commissioners had the legal duty to pass upon the sufficiency of petitions filed by candidates for alderman. The duties imposed upon the board of appeals by statute, vesting it with certain discretions and imposing upon it the duty to find facts, enter orders, revise assessments in whole or in part, swear and hear witnesses, and enter orders upon its findings, are of equal import, and the Supreme Court in *People ex rel. Harding v. Atwater,* 362 Ill. 546, in passing upon the findings of the board of assessors and of the board of review with reference to exemptions on property, characterized the action of the board as "judicial in character."

Where the contention has been made that the board of appeals is purely an administrative body, the courts of this State have consistently held that in reviewing assessments it possesses powers of a *quasi* judicial nature. In *Jarman v. Schuyler County Board of Review,* 345 Ill. 248, the Supreme Court said that decisions of that board were reviewable by certiorari, and certiorari is not available unless some property right is involved. (*Commissioners of Drainage District v. Griffin,* 134 Ill. 330.) To the same effect, are *Allwood v. Cowen,* 111 Ill. 481; *People ex rel. Harding v. Atwater,* 362 Ill. 546; *People v. Concordia Fire Ins. Co.,* 350 Ill. 265.

In *Independent Life Ins. Co. v. Rodgers,* 165 Tenn. 447, 55 S. W. (2d) 767, the Supreme Court of Tennessee held that pertinent expressions uttered by parties and witnesses in judicial proceedings are absolutely privileged; that statements made by an insurance company's president to the State insurance commissioner, indicating shortage in a former agent's accounts, on the basis of which the commissioner who had issued a license to the former agent, called on him for an explanation, were absolutely privileged, and that the

right of absolute privilege may be accorded statements made before other tribunals having attributes similar to courts of justice.

In *Shumway v. Warrick*, 108 Neb. 652, 189 N. W. 301, the Supreme Court of Nebraska held, in an action for libel, that defendant was justified by way of defense in questioning the integrity and responsibility of plaintiff, in an inquiry by the State banking board where the issues raised in his pleading were relevant and material to the inquiry.

In *Alagna v. New York & Cuba Mail S. S. Co.*, 155 N. Y. Misc. 796, 279 N. Y. S. 319, the court held the steamship company's letter to the federal radio commission, containing some alleged libelous matter, was absolutely privileged since the commission was authorized to subpoena witnesses, to hear and determine charges, and in so doing exercised judicial functions.

Plaintiff's counsel cites and relies on *North Chicago Hebrew Congregation v. Board of Appeals*, 358 Ill. 549, as holding that the board was purely administrative and not judicial. The court was there called upon to determine whether the subject matter brought the controversy within either the appellate or original jurisdiction of the court, so as to justify the exercise of discretion in favor of taking the case, and in discussing the question held that the board is not a *court* within our judicial system from which an appeal can be taken to the Appellate or Supreme Court, and that for the purpose of determining whether or not an appeal could be taken from the board, it was a nonjudicial body. We do not understand this decision as being at variance with prior cases in this State, holding that the board, in reviewing assessments, possesses powers of a *quasi* judicial nature. It was only for the purpose of determining whether a reviewing court would entertain an appeal from the board that its character was designated as administrative. No other cases are

cited in support of plaintiff's contention. After a careful examination of the statute creating the board and defining its duties, and all available decisions in Illinois and other States, we are of the opinion that for the purpose of invoking the rule of privilege in proceedings had before it, the board of appeals possesses the attributes of a *quasi* judicial body.

These conclusions lead to the inquiry whether Kirkland's statements and remarks were pertinent and material to any matter pending before the board. Count one of the amended complaint does not set forth any of the proceedings before the board, nor does it contain any allegations from which it can be determined whether or not the statements and remarks were pertinent or material to the subject of inquiry; it merely alleges that at a public hearing before the board, "a purely administrative body, . . . not a *quasi* judicial body or a judicial body," Kirkland maliciously made the statements attributed to him, by reason of which plaintiff was greatly injured in his business and reputation. No averment is made with reference to the possible pertinency of the remarks set forth in this count to the matter pending before the board; it is not even alleged in count 1 that the offensive statements were impertinent or immaterial to the subject matter on hearing. Under the well settled rules of pleading in this State this count is vulnerable to a motion to dismiss, which under the Practice Act takes the place of the former demurrer. *Schwender v. Smith*, 152 Ill. App. 436, is a case precisely in point. The court had there sustained a demurrer to a declaration for libel, and the defendants electing to abide by their demurrer judgment was entered for defendants and plaintiff appealed. In affirming the judgment the Appellate Court pointed out that the sole count of the declaration contained matter published in a bill in chancery filed in the circuit court

which was alleged to be libelous; that under the recognized rule of law the matter was prima facie privileged; that to state a cause of action it was necessary for the pleader to aver facts bringing the case within some exception to the rule and that the allegation in the declaration, charging the matter alleged to be libelous, "irrelevant, impertinent and immaterial to the subject matter or question involved in said bill," rested on no alleged fact as to the contents, scope, purpose or object of the bill, and that "unaided by presumptions or inferences from facts alleged, such averments are only statements of the legal conclusions of the pleader."

Count 2, as Exhibit B, however, attaches substantially all the proceedings before the board, and therefore the determination whether Kirkland's statements were pertinent, relevant and material to the subject of inquiry, necessitates an examination of these proceedings. Exhibit "B," occupying some 40 pages of the abstract, shows the connection between Kirkland's remarks and the subject matter on hearing, and may be briefly summarized as follows: At the outset Parker read his complaint into the record. He sought thereby, as a taxpayer on his own behalf and that of other taxpayers, to induce the board to make the capital stock assessment against the Tribune, on the theory that it had been entirely *omitted* by the assessor, and to fix the assessment pursuant to Rule 11 of the Illinois tax commission, which he charged had not been followed or taken into consideration by the assessor. The complaint made serious and caustic charges against the Tribune, its stockholders, the assessor and his predecessors in office, and alleged that the omission to tax the Tribune resulted from a conspiracy between the assessor and the Tribune to do the things of which Parker complained, maliciously and fraudulently. He claimed that J. E. Battle, of the assessor's office, had

admitted to him that Rule 11 had not been followed, that the tax in question had been entirely omitted, and that the assessor had preferred the Tribune over other taxpayers in respect of the capital stock tax. Battle emphatically denied all these contentions, and since there was nothing before the board except Parker's complaint, the question arose as to whether Parker was to be believed as against Battle with reference to these material contradictions.

At this stage of the proceedings Kirkland asked and had leave to make an opening statement, in which he commented on Parker's lack of credibility and asserted that anyone who charged the Tribune with having entered into a conspiracy with the assessor was just "a contemptible falsifier." He called the board's attention to the fact that its members were charged with similar criminal offenses in a mandamus proceeding filed by Parker, wherein he alleged among other things that the board, the assessor and his predecessors back to 1873, had been guilty of a conspiracy with the Chicago Tribune to prefer it over other taxpayers in the assessment of its capital stock taxes; that in the preceding year Parker had admitted before the board that a like complaint was part of his scheme to blackmail the Tribune into paying some $400,000 in settlement of a libel suit then pending against the Tribune, and that Parker had admitted coming to Kirkland's office and threatening that unless this sum were paid to him by way of settlement, he would file a tax complaint seeking to collect $87,000,000 from the Tribune, as an omitted capital stock tax, dating back to the year 1873, pursuant to a conspiracy, as he claimed, between the Tribune and the assessor and all of his predecessors in office, who were charged with defrauding the taxpayers to the extent of $87,000,000 for back taxes on capital stock; that in the hearing before the board during the preceding year Parker had admitted

dictating an affidavit making various charges and threats against the publisher of the Tribune and certain judges, and Kirkland asked that in accordance with the prayer in the Tribune's answer, the former proceedings before the board be made a part of the present record. The purpose and theme of Kirkland's opening statement was to emphasize Parker's lack of credibility, and by calling attention to events that occurred in connection with Parker's complaint before the board in 1935, to convince the board that his present complaint was part of a scheme to blackmail the Tribune into settlement of the libel suit, and to show the board that he was unworthy of belief. It was in the course of Kirkland's opening statement that the first four of the remarks complained of were uttered, namely, "he is just a contemptible falsifier," "his sole purpose is of blackmailing the Chicago Tribune Company," "he was a contemptible blackmailer," and "he has a diarrhea of the mouth." The record clearly shows that as to the first of the three slanderous remarks complained of Kirkland, as counsel advocating his client's cause, was merely orally explaining the defenses set up in its written answer, and however harsh they may seem they were, upon Kirkland's theory of defense, pertinent and material to the issues and therefore privileged.

When Kirkland had finished his opening statement charging Parker with being a falsifier and with attempting to blackmail the Tribune, Parker made no specific denial of the charges, but claimed that the reason he had not been indicted for blackmail and perjury was because Kirkland was afraid to complain of him to the State's attorney on account of the fact that Parker himself had charged Leslie A. Hodson, Kirkland's associate, with having committed fraud and perjury before the board in connection with the Tribune's taxes for the year 1933. Parker freely admitted that

he had sought Hodson's indictment for falsely swearing that the capital stock of the Tribune was worth only $19,186 in 1933, and these accusations and statements were repeated by him several times in the course of the hearing, and finally provoked the remaining statements by Kirkland, that "he is a rat, trying to get this young lawyer indicted," "he ought to be taken for a ride," and "it is a contemptible lie, and you are a dirty rat." After Parker's charges against Hodson had been repeated several times, the document purporting to have been falsely made and signed by Hodson was produced for examination before the board and it showed that not only had Hodson not sworn to it but that he had not signed it, and that the capital stock of the Tribune was assessed at $1,444,006 in 1933, and not at $19,186, as Parker claimed. When these facts were called to his attention Parker seemingly closed the incident by admitting that, "I don't know who did it," "We will forget that." Nevertheless, as the hearing progressed Parker again repeated the charge against Hodson and also accused Kirkland of complicity with Hodson, and it was in this connection, after Parker's charges had been repeated several times, that Kirkland made the remark, "he is a rat, trying to get this young lawyer indicted," "he ought to be taken for a ride." Twice thereafter Parker again repeated the charge against Hodson and the last time he accused the Tribune of defrauding the bungalow owners. It was then that Kirkland in apparent exasperation said, "you are a contemptible liar, and you are a dirty rat," to which Parker replied, "You are getting angry, isn't it fine?"

Defendant argues that in addition to the foregoing proceedings had before the board, Parker's autobiography, as disclosed by Parker himself, wherein he volunteered the information that he was a former inmate

of a prison or jail, without stating the charge upon which he was sentenced or how long a term he had served, gives further color to the imputation of blackmail and lack of credibility, but we do not think it necessary in view of the length of this opinion to further detail the statements made by Parker and Kirkland touching upon this phase of the proceeding.

In the light of Kirkland's contention that Parker was not to be believed, that he was actuated by improper motives in bringing his second complaint before the board, that Parker had falsely accused and preferred charges against Hodson for perjury, and on the face of the charges made in the complaint that the assessor, his predecessors in office, and others had entered into a conspiracy with the Tribune, fraudulently and maliciously, to defraud the taxpayers of back taxes on capital stock, it seems to us that Kirkland's first three remarks were pertinent to the inquiry. Parker's claims went to the root of his complaint, and if he were a credible person, actuated by good motives, the board might be swayed to grant the relief he prayed. Kirkland was seeking a dismissal of the complaint, charging Parker with lack of credibility and bad motives, and his statements were uttered in the course of an attempt as counsel for the Tribune to convince the board that it ought not to entertain Parker's second complaint, in the light of all the circumstances which were called to the board's attention by Kirkland.

The fourth statement that ''he has a diarrhea of the mouth,'' was uttered in Kirkland's opening statement, wherein he called the board's attention to the fact that ''the complaint does not state a single allegation of fact. It is just a jumble of words, a diarrhea of the mouth, which this gentleman is quite capable of having most of the time,'' and to which Parker replied, ''Yes.'' Parker's counsel contends that this statement is ac-

tionable because it implies plaintiff was infected with a dreaded and loathsome disease and not physically fit to associate with human beings. The remark, although occasionally used, is not one that should be expected or countenanced in the course of orderly procedure, but we do not consider it actionable in connection with the statement made by Kirkland, because there is no such disease, and, when considered together with the subject matter of Kirkland's statement, undoubtedly was intended merely to charge Parker with talking too much.

The remarks, "He is a rat," or "a dirty rat," and "He ought to be taken for a ride," though ill chosen and harsh, do not constitute actionable slander. The latter is more in the nature of a threat, if any meaning can be imputed to it, and the former are not defamatory *per se,* because neither of these utterances impute a crime, unchastity, loathsome communicable disease, or dishonesty and unfitness in his business. The only decision that we find giving judicial definition to a remark of a similar nature is *State v. Christie,* 97 Vt. 461, 123 Atl. 849, where the Vermont court defined the word, "rat," when applied to a person, as "one who works under conditions contrary to those prescribed by the union; a dirty, paltry fellow."

American courts have shown great liberality in construing remarks as pertinent and material to the subject matter on hearing. In *People ex rel. Bensky v. Warden of City Prison,* 258 N. Y. 55, 179 N. E. 257, the New York court of appeals, in speaking of the privilege of counsel in appealing to the exercise of the court's discretion in a mandamus proceeding, said: "The granting of the order rested in the sound discretion of the court. Any allegation which appellant or his counsel could possibly have believed would tend to influence the court to grant the order cannot be said to be impertinent beyond any question.

"  .   .   .

"The appellant might have believed that the court's discretion would be more readily moved to grant the relief prayed for, if it were informed that the granting of the certificate of occupancy was the result of a corrupt agreement rather than of an innocent mistake. It is not necessary to decide that such considerations should influence the discretion of courts. It is sufficient if the appellant, under the circumstances, believed that the language would have a tendency to move the court's discretion to grant the relief asked."

In *Warner v. Paine,* 4 N. Y. Super. Ct. (2 Sandford) 195, the court said (p. 200) : "The veracity of the complainant, to the mind of the defendant, may have been a material question, as it was on his alleged information that the principal statements in the bill rested. The defendant, after this, was not restricted to a mere denial of those facts; nor to the simple statement that the plaintiff was in an error, in respect to them. It was competent for him, if he had reason to think his interest in the suit would be advanced thereby, not only to say that the affidavit of the plaintiff in whole or in part, was false, but wilfully false, which is tantamount to what he did state; . . . ." And at page 201 : " . . . where matter is put forth by a party, or his attorney or counsel, in the course of a judicial proceeding, which may possibly be pertinent, courts should not, and will not, feel disposed so to regard it as to deprive its author of its privilege and protection. . . . Where it is fairly debatable whether the matter is relevant or not, we would incline to give the party or counsel using the words, the benefit of the doubt which may fairly exist as to its pertinency. In this case, we consider the matter alleged to be libelous, relevant."

Other instances of words spoken which were held to be privileged, may be found in *Maulsby v. Reifsnider,* 69 Md. 143, 14 Atl. 505, where defendant's counsel, on

the trial of an action by an attorney to recover for professional services, said that plaintiff, an attorney, had collected and refused to pay over $5,000 of defendant's money. This statement was said to be pertinent to the subject matter of inquiry, and whether true or false and whether spoken maliciously or in good faith, would not sustain an action for slander. In *Hollis v. Meux,* 69 Cal. 625, an attorney, in the course of his employment filed specifications of opposition to an insolvent's discharge, charging him with having been a privy to making false and fraudulent entries in his books with intent to defraud creditors, and with having sworn falsely in relation to his estate, and while acting in a fiduciary capacity with fraudulently converting property to his own use. These charges were held to be absolutely privileged. In *Craig v. Burris,* 4 Pennew. (Del.) 156, plaintiff was arrested for obtaining money under false pretenses, and the attorney for the prosecuting witnesses, while outside the justice's office, and before plaintiff had been before the justice to answer the charge, in the presence of plaintiff and others, said: "You collected this money by false pretenses, and it has to be settled here and now or you go up the road." It was held that these words were not outside the attorney's privilege.

The law is well settled that when words in themselves not actionable become so by reason of some special damage occasioned by them, such special damage must be particularly averred in the complaint, even though express malice is proved. In such case it is necessary that the declaration should set forth precisely in what way the special damage resulted; it is not sufficient to allege generally that plaintiff has suffered special damages. (37 Corpus Juris 36; *Strauss v. Meyer,* 48 Ill. 385.) Bouvier in his law dictionary, under the division of words actionable in themselves, says that they

must impute ''the guilt of some offense for which the party, if guilty, might be indicted and punished by the criminal courts.'' Tested by this rule, the record shows that Kirkland defined what he meant by ''blackmailer'' and ''blackmail''; he was characterizing what he said was Parker's admitted conduct. It was held in *Searcy v. Sudhoff*, 84 Ill. App. 148, that a person may at the time of speaking words which are, in their ordinary signification, slanderous by imputing crime, so qualify them by other words as to show that he uses them in a different sense and that all the words spoken at one time must be taken together, and although one part when detached from another may be slanderous, yet, if taken all together they may not be so. *Foval v. Hallett,* 10 Ill. App. 265, is to the same effect. Parker's amended complaint alleges no special damage and must therefore be held insufficient in that respect.

In determining whether statements or remarks are pertinent to the subject of inquiry, the courts of this and other States have been liberal in their application of the remarks to the subject matter, and have held that the privilege ''embraces anything that may possibly be relevant. All doubts should be resolved in favor of its relevancy or pertinency.'' (36 Corpus Juris, sec. 226, p. 1252, and cases cited therein.) In the leading case of *Hoar v. Wood,* 44 Mass. 193, the court pointed out that, subject to the restriction of pertinency, it is on the whole for the public interest, and best calculated to subserve the purposes of justice, to allow counsel full freedom of speech in conducting the causes and advocating and sustaining the rights of their constituents.

In the course of a trial or proceeding, counsel too often resort to invective when more temperate conduct and language would serve as well, but courts have

repeatedly said that it is on the whole to the public interest to allow counsel full freedom of speech. We are therefore impelled to hold that the court was not in error in dismissing the amended complaint and the judgment of the superior court is accordingly affirmed.

*Judgment affirmed.*

BURKE, P. J., and JOHN J. SULLIVAN, J., concur.