**M. C. MOCK, Appellant,**

v.

**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY,**
**Appellee.**

**No. 71–1317.**

United States Court of Appeals, Eighth Circuit.

Jan. 12, 1972.

Gerland P. Patten, Little Rock, Ark., for appellant.

William R. Wilson, Jr., Wright, Lindsey & Jennings, Little Rock, Ark., for appellee.

Before MATTHES and LAY, Circuit Judges, and HUNTER, District Judge.

HUNTER, District Judge.

This is an appeal from an order of the District Court dismissing appellant's complaint with prejudice. Jurisdiction is based upon diversity of citizenship under 28 U.S.C. §§ 1332 and 1441.

The facts underlying this appeal are relatively uncomplicated and have been presented upon an agreed statement of the parties. They are as follows. On November 23, 1967, while performing his duties as a railroad conductor, appellant, a twenty-seven year employee of the Railroad, stepped into a hole at the Railroad's yards in Bauxite, Arkansas. At the time of this incident, appellant claims that he suffered pain which quickly subsided. Appellant did not report the accident to the Railroad that day because he did not deem his alleged injury one which would require reporting under the rules of the Railroad.

Because of severe pain which appellant allegedly experienced in his back, he went to the Railroad's regional surgeon for treatment. Appellant was treated by this physician for a short period of time, but subsequently went to another physician who also had been approved by the Railroad. Appellant remained under regular medical treatment from December 12, 1967 until his dismissal from the Railroad.

On February 21, 1968, following several leaves of absence and period of hospitalization during the preceding month, appellant was given notice that the Railroad was conducting an administrative investigation into the facts surrounding the alleged accident of November 23, 1967. Following a hearing in which various aspects of the incident were considered and appellant's prior accident and disciplinary record was examined, appellant was discharged from his employment for a violation of the Railroad's rules.

Preparatory to the initiation of a proceeding before the National Railroad Adjustment Board, appellant pursued certain administrative procedures within the Railroad itself. Thereafter, after having failed to obtain reinstatement by means of these administrative procedures, appellant filed a petition for reinstatement and back wages in the proper division of the National Railroad Adjustment Board. In reply to that pleading, the Railroad alleged that appellant had properly been dismissed for a violation of the Railroad's rules of conduct and that appellant had dishonestly and fraudulently submitted a claim for an on-the-job injury which had not occurred.

On November 24, 1969, appellant brought suit in the Circuit Court of Pulaski County, Arkansas, seeking recovery of actual and punitive damages against the Railroad for allegedly publishing libelous and slanderous statements with regard to appellant's honesty. Shortly

thereafter, the cause was removed to the District Court. After ascertaining that the sole basis for appellant's charge of defamation by the Railroad was the allegation of dishonesty contained in its reply pleading in the National Railroad Adjustment Board proceeding, the District Court found the averment to be absolutely privileged and dismissed appellant's complaint.

On this appeal, appellant urges that the averment of dishonesty made by the Railroad in the proceedings before the Board was not absolutely privileged because, appellant contends, the Board is neither a judicial tribunal nor a quasi-judicial body. Conversely, the Railroad contends that the proceedings before the Board are quasi-judicial in nature and that the allegations made in pleadings during those proceedings are absolutely privileged. Although the parties present differing views as to the state law to be applied,[1] because the issues herein arise from proceedings authorized by federal statute and present overriding federal policy considerations, "the [Railroad's] claim of absolute privilege must be judged by federal standards, to be formulated by the courts in the absence of legislative action by Congress."[2] Howard v. Lyons, 360 U.S. 593, 597, 79 S.Ct. 1331, 1334, 3 L.Ed.2d 1454 (1959). Cf. United States v. Standard Oil Company, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947); Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L. Ed. 838 (1943).

Based upon a survey of authority relating to the applicable law of defamation, it is clear that the allegation contained in the Railroad's pleading, made during the regular course of proceedings initiated by appellant in the National Railroad Adjustment Board, was absolutely privileged. For, like the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are "quasi-judicial" in nature.[3] A. Hanson, Libel and Related Torts ¶109, p. 86 (1969 ed.); W. Prosser, Torts § 114, pp. 779, 780 (1971 ed.); Restatement, Torts § 587, Comment e, and § 585, Comment b (1938); 50 Am.Jur. 2d, Libel and Slander § 234, pp. 746–748 (1970 ed.); Annot., 45 A.L.R.2d 1296

---

1. Appellant urges the application of the substantive law of Arkansas, while the Railroad contends that Illinois law should be applied. As a practical matter, it appears that the outcome of this appeal would be the same regardless of whether the substantive law of Arkansas or Illinois were applied. *Compare* Mauney v. Millar, 142 Ark. 500, 219 S.W. 1032 (1920); Rhode Island Insurance Co. v. Boatright, 186 Ark. 796, 56 S.W.2d 173 (1933); Johnson v. Dover, 201 Ark. 175, 143 S.W.2d 1112 (1940); Howard v. Ward, 238 Ark. 514, 383 S.W.2d 107 (1964); Gilpin v. Tack, 256 F.Supp. 562 (W.D.Ark.1966), *with* Parker v. Kirkland, 298 Ill.App. 340, 18 N.E.2d 709 (1939); Dean v. Kirkland, 301 Ill.App. 495, 23 N.E.2d 180 (1939); John Allan Co. v. Brandow, 59 Ill.App.2d 328, 207 N.E.2d 339 (1965). Although the Arkansas courts have not spoken directly upon the applicability of an absolute privilege in quasi-judicial proceedings, there is every reason to believe that it would apply the privilege in view of the overwhelming support of general authority in favor of according the privilege. As is later articulated in this opinion, the substantive law of both states comports with the applicable federal standard.

2. For an excellent discussion of the application of federal standards in situations which are basically of federal origin, see: C. Wright, Federal Courts § 60, pp. 247–253 (1970 ed.).

3. See, also, White v. Holtherby, 192 F.2d 722 (5th Cir. 1951); Corbin v. Washington Fire and Marine Ins. Co., 278 F. Supp. 393 (D.S.C.1968), aff'd per curiam 398 F.2d 543 (4th Cir. 1968); James v. Federal Deposit Ins. Corp., 231 F.Supp. 475 (W.D.La.1964); White v. United Mills Co., 240 Mo.App. 443, 208 S.W.2d 803 (1948); Reagan v. Guardian Life Ins. Co., 166 S.W.2d 909 (Tex.1942); Ramstead v. Morgan, 219 Or. 383, 347 P.2d 594, 77 A.L.R.2d 481 (1959); Parker v. Kirkland, 298 Ill.App. 340, 18 N.E. 2d 709 (1939); Rainier's Dairies v. Raritan Valley Farms, 19 N.J. 552, 117 A.2d 889 (1955); Jones v. Life Ins. Co., 215 So.2d 889 (Fla.Ct.App.1968).

(1956). A determination of the applicability of that privilege to the administrative proceedings of the National Railroad Adjustment Board turns upon two basic considerations: (1) Is the administrative proceeding "quasi-judicial" in nature? and (2) Was the allegedly defamatory statement in some way relevant to the issues involved in that proceeding? With reference to the appeal before us, the response to both inquiries is affirmative.

■ Although widely diverse administrative proceedings have been characterized as "quasi-judicial," and several methods have been utilized to determine whether a particular proceeding was "quasi-judicial" in nature, the term is most generally applied where the function of the administrative body under consideration involves the exercise of discretion in the application of legal principles to varying factual situations and requires notice and hearing [4] City of Englewood v. Dailey, 158 Colo. 356, 407 P.2d 325, 327 (1965); Restatement Torts § 585, Comment b (1938); W.

Prosser, Torts, § 114, p. 779 (1971 ed.). That the National Railroad Adjustment Board is a "quasi-judicial" body is apparent from both its purpose and its statutorily-created attributes. Generally, the purpose of the Board is to function as "an expert body to settle 'minor' grievances . . . which arise from day to day in the railroad industry." Gunther v. San Diego & Arizona E. R. Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965).[5] And, in creating the procedural framework of the Board for the resolution of such "minor disputes," Congress provided it with the attributes of a "quasi-judicial" body. The Act provides that notice is to be given by the Board to the interested employee and carrier, that the Board is authorized to conduct hearings and make written findings, that the interested parties are to be furnished the Board's written findings, and that the awards of the Board are final and binding and, with the exception of certain narrowly-defined circumstances, conclusive in later judicial proceedings. 45 U.S.C. § 153. See: Elgin, J. & E. R. Co., *supra*;

4. See also: United States v. Kearns, 115 F.2d 552 (10th Cir. 1940); Thompson Products v. National Labor Relations Board, 133 F.2d 637 (6th Cir. 1943); National Candy Co. v. Federal Trade Commission, 104 F.2d 999, 1004 (7th Cir. 1939); Brunswick v. Elliott, 70 App. D.C. 45, 103 F.2d 746 (1939); Corbin v. Washington Fire and Marine Ins. Co., *supra*; Richeson v. Kessler, 73 Idaho 548, 255 P.2d 707 (1953); Parker v. Kirkland, *supra*.

5. The distinction between major disputes and minor disputes has been stated in the following manner:
"The [major disputes] present the large issues about which strikes ordinarily arise with the consequent interruptions of traffic the Act sought to avoid. Because they more often involve those consequences and because they seek to create rather than to enforce contractual rights, they have been left for settlement entirely to the processes of noncompulsory adjustment.
"The so-called minor disputes, on the other hand, involving grievances, affect the smaller differences which inevitably appear in the carrying out of major

agreements and policies or arise incidentally in the course of an employment. They represent specific maladjustments of a detailed or individual quality. They seldom produce strikes, though in exaggerated instances they may do so. Because of their comparatively minor character and the general improbability of their causing interruption of peaceful relations of traffic, the 1934 Act sets them apart from the major disputes and provides for very different treatment." Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 723–724, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). See also: Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905 (8th Cir. 1966); McBride v. Trans World Airlines, Inc., 312 F.Supp. 731 (W.D.Mo.1970). Basically, the National Railroad Adjustment Board therefore serves to relieve the courts of the burden of resolving a voluminous number of contractual claims of railroad and airline employees which relate to their individual employments. See: Walker v. Southern R. Co., 385 U.S. 196, 198, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966); 1966 U.S.Code Cong. & Admin.News, p. 2285.

Gunther v. San Diego & Arizona E. R. Co., *supra*; Brotherhood of R. R. Trainmen v. Denver & R. G. W. R. Co., 370 F.2d 833 (10th Cir. 1966), cert. den. 386 U.S. 1018, 87 S.Ct. 1375, 18 L.Ed.2d 456 (1967); Andrews v. Louisville & Nashville R. Co., 441 F.2d 1222 (5th Cir. 1971). Further the policy considerations in promoting full revelation of the facts underlying a particular dispute and complete development of those facts in the Board proceedings dictate that an absolute privilege should be applicable. Therefore, we find that the proceedings of the National Railroad Adjustment Board are "quasi-judicial" in nature and that an absolute privilege applies to relevant statements made during those proceedings.

█ There remains for determination the question of whether the Railroad's averment that appellant had dishonestly and fraudulently submitted an injury claim was relevant to the issues before the Board. For the purposes of ascertaining the scope of the privilege in quasi-judicial proceedings, the requirement of "relevancy" is to be liberally construed. W. Prosser, Torts § 114 (1971 ed.); Restatement, Torts § 588, Comment c (1938); Ginsburg v. Black, 192 F.2d 823, 825 (7th Cir. 1951); Taliaferro v. Sims, 187 F.2d 6 (5th Cir. 1951); Brown v. Shimabukuro, 73 App.D.C. 194, 118 F.2d 17 (1940); Johnston v. Schlarb, 7 Wash.2d 528, 110 P.2d 190, 134 A.L.R. 474 (1944). And, it is obvious that even under a more restrictive test of "relevancy," the statement of an employer's belief that its employee dishonestly submitted a fraudulent injury claim and that this violation of the employer's rules of conduct was the basis for the discharge of that employee is relevant in an administrative proceeding for reinstatement and back wages. Thus, the Railroad, as a matter of law, cannot be held liable for that allegation in a later court action by the employee who subsequently claims he has been defamed.

---

* █ Rule 18, 5th Cir. See Isbell Enterprises, Inc. v. Citizens Casualty Co. of

Accordingly, for the reasons stated above, the order of the District Court dismissing appellant's complaint is hereby affirmed.