# Richmond

## L. T. Elder v. R. H. Holland.

June 12, 1967.

Record No. 6438.

Present, All the Justices.

*R. R. Ryder*, for the plaintiff in error.

*Richard L. Williams* (*Alexander H. Slaughter*; *McGuire, Woods & Battle*, on brief), for the defendant in error.

GORDON, J., delivered the opinion of the court.

Elder brought this action against Holland for common law defamation and under the insulting-words statute (Va. Code Ann. § 8-630 (Repl. vol. 1957)). The trial court sustained Holland's demurrer to Elder's motion for judgment, and Elder now appeals.

Elder, a State police officer, was on special assignment to the Governor of Virginia during 1962. In March or April of that year, the Superintendent of the State Police received a complaint that the State "had paid twice" for Elder's transportation to Honolulu to attend a Governors Conference. The superintendent's executive officer directed Holland, a State police captain, to investigate the complaint.

Holland made a report to the superintendent setting forth his findings on the original complaint and also on other suspected irregularities in Elder's expense accounts. On May 14, following an informal hearing in his office, the superintendent dismissed Elder from the Department of State Police.

The superintendent held a more formal hearing on August 31, 1962. He described it as a "Departmental hearing to aid me in the administration of the Department of State Police, and determine what action I should take". Elder was represented at the hearing by his attorney; an Assistant Attorney General appeared on behalf of the Commonwealth. Elder, Holland and fourteen other witnesses testified. All testified under oath, and a court reporter transcribed the proceedings.

Elder admitted that Wilbur Walker, an Administrative Assistant to the Governor, had advanced State funds for his transportation to Honolulu to attend the Governors Conference. Elder asserted, however, that he had repaid these funds to Walker before submitting an expense account to the Department of State Police seeking reimbursement for his expenses on that trip.

While Holland was testifying at the August 31 hearing, he was asked to repeat what Walker had said to him during his investigation of the charges against Elder. Holland said (in part): "We talked at some length in there, and before he [Walker] left he was standing up against the wall by the door before we left, and he made this statement, he said: Jack Elder is a vicious, evil, common person. He does not believe in God and you cannot do business with a man that doesn't believe in God, and you have no business with such a man in your police department."

At the conclusion of the testimony, the superintendent announced his conclusion that Elder's dismissal on May 14 was proper.

In his motion for judgment Elder alleged that Holland "wrongfully, maliciously and injuriously" uttered and published the words purportedly said by Wilbur Walker, quoted in the second preceding paragraph. (The words as set forth in the motion for judgment are not identical with, but are substantially the same as, those quoted in the second preceding paragraph.)

Holland filed a plea asserting his immunity from liability for the words he spoke. He alleged that he spoke them in the scope of his official duties as a member of the Virginia Department of State Police. He therefore claimed that as an agent of the State he was protected by the State's immunity from tort liability.

By a bill of particulars Elder stated that the words uttered by Holland on August 31, 1962 were uttered "during the course of what might be termed a hearing". Holland then filed a demurrer to the motion for judgment and bill of particulars, alleging that Elder had failed to state a cause of action and had failed to allege any facts upon which relief could be granted.

Subsequently the parties stipulated that the transcript of the August 31, 1962 hearing "insofar as it is relevant, . . . constitutes evidence in this case taken without objection and available to be used by either party for any purpose in the conduct of his case before this Court or upon appeal." (The facts recited in the second through seventh paragraphs of this opinion are taken from that transcript, which is part of the record before us.)

The court brought the action on to be heard upon the plea and the demurrer. It sustained the demurrer, without assigning reason. The court found it unnecessary to rule on the plea. Elder now appeals from the order sustaining the demurrer.

Elder's counsel argues that the motion for judgment stated a cause of action. We agree.

Holland's counsel contends, however, that even if the motion for judgment stated a cause of action, the trial court properly sustained his demurrer. He argues that when the bill of particulars and the transcript of the August 31, 1962 hearing are considered, it is apparent that the State required Holland to testify at the hearing in the performance of his duties as a State police officer. Consequently, any damage inflicted by Holland's words was inflicted by the State. Because the State cannot be liable, says counsel, its agent Holland is also immune from liability.

[1] Holland's counsel contends that it was proper for the trial court to consider the bill of particulars and the transcript of the August 31, 1962 hearing. He points out that the bill of particulars, which admitted that Holland spoke the words at a hearing, is a pleading under our Rule 3:18(a) (Va. Code Ann., Vol. II, p. 595 (Repl. vol. 1957); 205 Va. 986). He points also to the stipulation that permitted either party to use the transcript of the hearing for any purpose in the trial court or here. Counsel says that by this stipulation Elder waived the rule that nothing outside the pleadings can be considered upon a demurrer, citing *Smith* v. *Wolsiefer*, 119 Va. 247, 89 S.E. 115 (1916); *King* v. *Norfolk & Western Ry.*, 99 Va. 625, 39 S.E. 701 (1901).

We interpret the stipulation as a consent that the transcript of the hearing be incorporated into the motion for judgment for the purposes of the demurrer. So we will consider the facts disclosed by the transcript in deciding whether the trial court should have sustained the demurrer.

[2] Counsel relies principally on *Sayers* v. *Bullar*, 180 Va. 222, 22 S.E.2d 9 (1942), to support his argument that Holland, an agent of the State, is immune from liability for his defamatory words. Sayers brought an action for damages against two State employees who had exploded dynamite charges while constructing a fish hatchery on State property near Sayer's farm. Sayers alleged that the explosions had caused his spring to cease flowing. The defendants demurred on the ground that they, as State employees, were immune from such an action. The trial court sustained the demurrer, and we affirmed.

We said "as long as . . . [the State's] agents act legally and within the scope of their employment, they act for the State, but if they act wrongfully the conduct is chargeable to them alone". *Id.* at 228, 22 S.E.2d at 11. We pointed out that the State had the right to construct the hatchery, and there was no allegation that the defendants had exceeded the authority or directions given them or that the defendants had acted negligently. So "they were acting solely in their representative capacity as lawful and proper agents of the State and not in their own individual right. * * * The alleged act of the defendants was the act of the State. * * * The State cannot be liable, therefore the defendants cannot be liable". *Id.* at 229, 22 S.E.2d at 12.

On facts of the *Sayers* case, we held that the State employees were protected by the State's immunity from tort liability. But we recognized that a State employee may be liable for his conduct while per-

forming work for the State, if his conduct is wrongful. "The true rule would seem to be to require proof (and allegation) of some act done by the employee outside the scope of his authority, or of some act within the scope of authority but performed so negligently that it can be said that its negligent performance takes him who did it outside the protection of his employment." *Id.* at 229, 22 S.E.2d at 12.

In *Wynn* v. *Gandy*, 170 Va. 590, 197 S.E. 527 (1938), we affirmed a judgment against the driver of a county school bus based upon his ordinary negligence while performing his duties for a governmental agency. In *Rives* v. *Bolling*, 180 Va. 124, 21 S.E.2d 775 (1942), we affirmed a judgment against a State policeman for his negligent shooting of a young woman while he was performing his duties. In *Berry* v. *Hamman*, 203 Va. 596, 598, 125 S.E.2d 851, 853 (1962), we pointed out by dictum that a police officer may be personally liable for negligent acts in the performance of a ministerial duty. And in *Green & Company* v. *Thomas*, 205 Va. 903, 140 S.E.2d 635 (1965), we said that negligence must be proved if a contractor performing work for the State is to be held personally liable in a tort action.

Having concluded that a State employee may be held liable for negligent conduct, we must conclude that a State employee may be held liable for intentional torts. Holland is therefore not immune from liability for defamatory words spoken while performing his duties as a State police officer.

This conclusion accords with the decisions of a majority of the state courts in this country that have passed on the question. 47 Calif. L. Rev. 303, 342 & n. 246 (cases collected) (1959).

The Court of Appeals of Maryland in *Mason* v. *Wrightson*, 205 Md. 481, 109 A.2d 128 (1954), held a Baltimore policeman personally liable for assault and battery and false imprisonment. Sergeant Wrightson, acting on orders from his captain and the Commissioner of Police to "search for possession of dangerous weapons on all persons coming under police suspicion", took a squad of policemen to a Baltimore night club to search all male patrons. Plaintiff Mason, an attorney, refused to submit to a search, telling Wrightson there was no legal basis for the search. Wrightson then searched Mason without his consent.

The Maryland court found the search unjustified and held that it constituted assault and battery and false imprisonment. Sergeant Wrightson was personally liable for his conduct: "When a peace

officer goes beyond the scope of the law he may become liable civilly and is not shielded by the immunity of the law . . . The fact that the appellee [policeman] was acting under orders of a superior officer does not relieve him of civil liability for his actions which are illegal and beyond the scope of duty".[1] *Id.* at 487, 109 A.2d at 131.

In *City of Mullens* v. *Davidson*, 133 W.Va. 557, 57 S.E.2d 1 (1949), a defamation action, the defendant policeman asserted absolute privilege which, if not a synonym of immunity, is tantamount to immunity. Davidson, while performing his duties as a policeman, had allegedly uttered defamatory words about Jones. The City brought an action for the benefit of Jones against Davidson and the surety on Davidson's bond. The trial court sustained the surety company's demurrer to the declaration. On appeal the surety company argued that the demurrer had been properly sustained because the utterance of defamatory words by a policeman in the performance of his duties was absolutely privileged. The West Virginia court disagreed:

> " 'With a few exceptions not necessary to mention, absolutely privileged communications are limited to legislative, judicial and quasi-judicial proceedings and other acts of the State.' Obviously the statements or the communications of a municipal police officer are not within any category covered by the foregoing rule." *Id.* at 564, 57 S.E.2d at 6.

The court held that the defendant policeman had only a qualified privilege.

The plaintiff in *Hedgepeth* v. *Swanson*, 223 N.C. 442, 27 S.E. 2d 122 (1943), brought action against a sheriff and his surety for malicious prosecution. The trial court sustained the defendant's demurrer. On appeal, the Supreme Court of North Carolina reversed, holding that a public officer who acts corruptly or with malice is liable to an individual who has suffered by reason of the corrupt or malicious action.[2]

---

1 The Maryland court did not discuss the question whether the policeman should have been afforded a qualified privilege for his actions in making the search. Qualified privilege is discussed later in this opinion.

2 By dictum the North Carolina court suggested that judges may be held liable for malicious or corrupt actions in the discharge of their judicial duties. Our citation of the case does not indicate our concurrence with that view. See *Pierson* v. Ray, 86 U.S. 547, 553-555, 87 S.Ct. 1213, 1217-18, 18 L.ed.2d 288, 294-95 (1967).

[3] We now turn to the question whether Holland's words were absolutely privileged because he spoke them at the August 31, 1962 hearing.

Testimony given during a judicial proceeding is absolutely privileged. *Penick* v. *Ratcliffe*, 149 Va. 618, 140 S.E. 664 (1927). Courts in other states have extended the absolute privilege to certain proceedings before administrative or regulatory bodies. *Robertson* v. *Industrial Insurance Company*, 75 So.2d 198, 45 A.L.R. 2d 1292 (Fla. 1954) (hearing before Insurance Commission to revoke insurance agent's license); *Rainier's Dairies* v. *Raritan Valley Farms, Inc.*, 19 N.J. 552, 117 A.2d 889 (1955) (hearing before Director of Milk Industry to revoke dairy licenses).

But absolute privilege should not be extended to all administrative hearings. As the court reasoned in *Rainier's Dairies* v. *Raritan Valley Farms, Inc., supra*:

> "It is true that in strictly judicial proceedings the potential harm which may result from the absolute privilege is somewhat mitigated by the formal requirements such as notice and hearing, the comprehensive control exercised by the trial judge whose action is reviewable on appeal, and the availability of retarding influences such as false swearing and perjury prosecutions * * *. But where, as here, the administrative proceeding was actually conducted in manner and with safeguards similar to a judicial proceeding and dealt with issues of significant public concern there would, under this or any other plausible view, be no basis for refusing to invoke the doctrine of absolute privilege or immunity to the same extent that it would be applicable in court proceedings." *Id.* at 562, 117 A.2d at 894.

*Engelmohr* v. *Bache*, 66 Wash. 2d 103, 401 P.2d 346 (1965), *petition for cert. dismissed*, 382 U.S. 950, 86 S.Ct. 431, 15 L.ed. 2d 463 (1965), applied this reasoning in holding that absolute privilege did not apply to words spoken at a hearing before a Study Group appointed by the Securities and Exchange Commission. The SEC, acting pursuant to a Federal statute, appointed the Study Group to investigate the adequacy of rules governing national securities exchanges and to report its results and recommendations to Congress. The court, following the rationale of *Rainier's Dairies, supra*, concluded that the hearing before the Study Group "was not con-

ducted in a manner essential to constitute a quasi-judicial administrative proceeding." *Id.* at 107, 401 P.2d at 348-349.

At the beginning of the August 31, 1962 hearing the Superintendent of the Virginia State Police correctly pointed out: "This is not a hearing before a Court of law, it is a Departmental hearing to aid me in the administration of the Department of State Police, and determine what action I should take."

The safeguards that surround a judicial proceeding did not surround the August 31, 1962 hearing. The superintendent could not issue subpoenas to compel attendance at the hearing. In fact, the transcript indicates that Wilbur Walker declined to attend. It is not certain that any witness who may have testified falsely at the hearing could have been convicted of perjury. Rules of evidence applicable at a judicial proceeding were not applied at the hearing. Holland's hearsay testimony that gave rise to this action should not have been permitted in a judicial hearing.[3]

We conclude that the August 31, 1962 hearing should not afford Holland an absolute privilege.

We have been called upon in this case to accommodate two public interests that have collided. Public servants should be free to testify at departmental hearings in the discharge of their duties without fear of being haled into court. On the other hand, courts should not be closed to citizens whose reputations have been injured by defamatory words. See *Ranous* v. *Hughes*, 30 Wis.2d 452, 466, 141 N.W.2d 251, 258 (1966).

Upon precedent and reason, we believe the best adjustment is to afford Holland a qualified privilege. *City of Mullens* v. *Davidson, supra,* 133 W.Va. 557, 57 S.E.2d 1 (1949); *Engelmohr* v. *Bache, supra,* 66 Wash. 2d 103, 401 P.2d 346 (1965); *Restatement, Torts* § 591; *Restatement* (Second), *Torts* § 591 (Tent. Draft No. 12, 1966).

[4] We hold, therefore, that the trial court improperly sustained Holland's demurrer. We will remand the case with direction that the

---

3 The August 31, 1962 hearing was not held under the General Administrative Agencies Act, Va. Code Ann. §§ 9-6.1 through -6.14 (Repl. vol. 1964); in fact, counsel have not suggested that it was held under that Act. The Act provides for the publication and filing of proposed rules by State agencies, the issuance of subpoenas requiring attendance at hearings, that "hearsay evidence shall be received [in contested cases] only if the declarant is not readily available as a witness"; and for judicial review in contested cases. We express no opinion whether a witness should be afforded an absolute privilege for testimony given in a hearing under the General Administrative Agencies Act.

demurrer and Holland's plea of immunity be overruled. Because of Holland's qualified privilege, Elder must sustain his burden of proving actual malice to defeat the privilege. *Story* v. *Newspapers, Inc.*, 202 Va. 588, 118 S.E.2d 668 (1961); *Crawford and Company* v. *Graves*, 199 Va. 495, 100 S.E.2d 714 (1957); *cf. Giant of Virginia* v. *Pigg*, 207 Va. 679, 152 S.E.2d 271 (1967) (respecting the burden of proving actual malice to support punitive damages for malicious prosecution). Nothing in the transcript of the August 31, 1962 hearing supports a finding of actual malice. Nonetheless, Elder should be permitted to bring forth proof of actual malice if he can.

*Reversed and remanded.*