## CIRCUIT COURT OF THE CITY OF RICHMOND

Blue Ridge Nursing Home, Inc.

v.

Blue Cross and Blue Shield
of Va., Inc., et al.

### December 13, 1973

By JUDGE A. CHRISTIAN COMPTON

Enclosed you will find a copy of the order entered today which dismisses this action.

In the amended motion for judgment seeking judgment jointly and severally against the defendants, the plaintiff asserts that it is a Virginia corporation having its principal place of business in Stuart, Virginia, and that it carries on the business of a nursing home, being certified as an Intermediate Care Facility (ICF) by the Virginia State Health Department.

It alleges that it has accepted and cared for the welfare "clients" of the Patrick County, Henry County, and Martinsville City welfare boards who had qualified for "old age assistance" (OAA) or "aid to the permanently and totally disabled" (APTD) as defined in the Virginia Public Welfare and Assistance Law. Code, §§ 63.1-87 *et seq.*

Prior to January 1, 1971, it is alleged that the plaintiff's home was certified as an Extended Care Facility (ECF) under the Medicare Program and as a Skilled Nursing Facility under the Medicaid Program and "reimbursement monies" were "available from the fiscal intermediary"

for ECF patients and from the State Health Department for skilled Medicaid patients.

It is further asserted that subsequent to January 1, 1971, when the plaintiff was certified as an ICF, about 87% of all payments made by the local boards aforesaid "on behalf of" their OAA and APTD "clients" to the plaintiff were reimbursed to these boards by the State Department of Welfare and Institutions (State Department).

The amended complaint states that "[i]n order to determine the amount of assistance which should be paid to authorized nursing homes on behalf of OAA and APTD patients pursuant to Title 63.1 of the Code of Virginia, it is alleged upon information and belief that the [State] Department, through the State Board entered into an agreement, contract, or arrangement with Blue Cross whereby Blue Cross, acting as agent on behalf of the [State] Department, the Division [of General Welfare], the local welfare boards, and local departments of social services or local departments of welfare and superintendents of such departments throughout the Commonwealth [including specifically the local defendants herein] . . . would calculate and determine the maximum rate at which nursing homes throughout the Commonwealth certified as ICFs, including specifically Blue Ridge, would be compensated for caring for OAA and APTD clients of the various local welfare boards."

It is further alleged that upon the plaintiff's application for certification as an ICF "it became the duty of Blue Cross" pursuant to the terms of the aforesaid agreement to determine the maximum rate which the plaintiff would be entitled to receive for caring for the OAA and APTD patients of the local boards aforesaid. Following the submission in December of 1970 to Blue Cross of the required financial information, it is asserted that Blue Cross determined the rate aforesaid to be $513 per patient per month effective January 1, 1971, and that the plaintiff relied on this rate to its detriment "by planning the financial management of its home for the ensuing year."

Because the Patrick County Board in April of 1971 sought to transfer nineteen of its "clients" to another nursing home, a dispute arose between the County and its patients, and Patrick County refused to continue payments on behalf of its nineteen patients during the time when

they successfully appealed the county ruling to the State Board. No payments were received by the plaintiff until November of 1971 when the State resumed payments and made them directly to the plaintiff, pursuant to Code, Section 63.1-123, but at the rate of $470.00 per patient per month. The plaintiff alleges that it continued to care for the nineteen patients at a level equal to that previously provided and did not discharge them during the period of the dispute.

It is alleged that such refusal to continue payments during the appeal process violated the rules of the State Department, the Division and the State Board of Welfare and Institutions (State Board).

The plaintiff asserts that during the appeal process aforesaid, the defendants "reevaluated" the rate and that it was advised on September 13, 1971, by the Director of the Division that "a considerable error" had been made in the computation of the rate by Blue Cross and that it would then be compensated at the $470.00 figure.

The plaintiff further alleges that when the State Board sustained the Patrick patients' appeals, it received compensation for caring for these persons from April, 1971, but at the lower rate of $470.00 per patient per month, as aforesaid. It contends that since October 1, 1971, it has received compensation for all OAA and APTD patients from the aforesaid local boards at the $470.00 rate.

It is further alleged that the plaintiff's claim to the State Comptroller for compensation at the higher rate has been denied and it brings this suit seeking damages, costs, and attorney's fees contending: that the defendants erroneously calculated the maximum rate; erroneously informed the plaintiff of the $513.00 rate upon which it justifiably relied; and that the proper rate is "in excess of" $470.00. Damages are claimed "[a]s a result of the conduct of the defendants and their failure to perform their obligation . . . ."

Named as defendants are Blue Cross, the Comptroller, and, in their individual and official capacities, the Director of the State Department and the Division, the chairman and each member of the State Board, the Superintendents of the local departments and each member of the

local county boards and the City Council of Martinsville and its City Manager. Everybody in sight has been sued.

The plaintiff argues that the facts alleged support a claim against each defendant both in contract (accepted offer for a unilateral contract and promissory estoppel) and in tort (misrepresentation).

### 1. *The Martinsville Council and City Manager In Their Official and Individual Capacities.*

No allegation is found in the amended motion for judgment asserting any identifiable claim against these defendants, officially or individually, so their demurrer is sustained.

### 2. *The Other Defendants Sued In Their Individual Capacity.*

With the exception of Blue Cross and The Comptroller, all of the remaining defendants have been sued both in their official and individual capacities. Their respective demurrers as they relate to the claim against each individually are severally sustained upon the ground that, considering the allegations of the amended motion for judgment as they must be on demurrer, no cause of action has been stated which would entitle the plaintiff to recover against these public officers individually upon either of the contract theories advanced or the tort theory asserted. In a nutshell, the facts alleged fail to support the argument advanced by the plaintiff.

### Contract Liability

Each of the aforesaid defendants fall within the accepted definition of a public official, *i.e.* each occupies a position created by law with duties cast upon the incumbent which involve an exercise of some portion of sovereign power and in which the public is concerned, continuing in their nature, and not merely occasional or intermittent. 15 M.J., *Public Officers*, § 2, p. 62. Each of these defendant's positions are created under Title 63.1 of the Code. The rule is settled that a public officer acting within the scope of his authority and in his official capacity is not liable, in his individual capacity, upon contracts

made in the performance of his duties. 1A M.J. *Agency*, sect. 80, page 507. See also 63 Am. Jur. 2d, *Public Officers and Employees*, § 319, p. 820. The court has not been referred to any authority (nor has any been found) which would alter this rule when an express contract is not involved but a theory of promissory estoppel or offer for a unilateral contract is relied upon.

The plaintiff argues that if these "contracts" were created as alleged, then these defendants "may well be liable . . . under basic principles of agency law for breach of an implied warranty of agency." This, of course, is an argument based on the making of a contract in excess of authority. 3 Am. Jur. 2d *Agency*, § 298; 63 Am. Jur. 2d *Public Officers and Employees*, § 321. The averments in the amended motion are not sufficient to sustain such a position. To paraphrase from the opinion in *Sayers* v. *Bullar*, 180 Va. 222, 228 (1942) (an action in tort but dealing with authority excesses) there is no allegation that these defendants have stepped beyond the course of their employment. There are no facts alleged (as distinguished from the pleader's conclusion) to show that they exceeded their authority or to show they were acting individually and on their own responsibility. "On the other hand, it is quite clear from the allegations and the averments of the [amended motion for judgment] . . . that they were acting solely in their representative capacity as lawful and proper agents of the State [or locality] and not in their own individual right."

An analysis of the amended motion paragraph by paragraph will demonstrate its insufficiency in this regard. The opening paragraph states the conclusion that the amount sued for is "justly due" from the defendants. Paragraphs 1 through 13 describe the parties and their functions. Paragraphs 14 and 15 allege a contract between Blue Cross and the State Department whereby Blue Cross allegedly acted as the agent of the other State and local defendants and sets forth a "duty" upon Blue Cross to determine the rate in question. Paragraphs 16, 17, and 18 deal with the establishment of the $513.00 rate and the plaintiff's reliance thereon. Paragraphs 19 through 24 state the dispute between the nineteen patients and the Patrick Board and the plaintiff's action in reference thereto. Paragraph 25 asserts a rule violation by the Patrick Board. Paragraphs

26 through 30 state the circumstances surrounding the rate reevaluation, the plaintiff's claimed loss and the assertion of its claim. Paragraphs 31 through 35 claim "errors" in calculation, assert that a "proper rate" is in excess of $470.00 per month, and claim damages as "a result of the conduct" of the defendants. In summary, the entire pleading is devoid of any sufficient allegation supporting a finding of conduct in excess of authority or action in any capacity but a representative one. When all of the averments of the declaration may be true without imposing a legal liability upon the defendant, the demurrer must be sustained. *Smith* v. *Wolsiefer,* 119 Va. 247, 252 (1916).

### Tort Liability Individually

An employee of the State is immune from actions in tort based on simple negligence under the doctrine of sovereign immunity when he performs supervisory functions or exercises discretionary judgment within the scope of his employment. *Lawhorne, etc.* v. *Harlan,* 214 Va. 405 (1973), and *Bellamy* v. *Gates,* 214 Va. 314 (1973), both decided November 26, 1973. No liability attaches under this rule to these defendants individually. While the plaintiff argues that facts "may" develop which will show a ground of liability on the defendants individually, the law requires allegation " 'of some act done by the employee outside the scope of his authority, or of some act within the scope of authority but performed so negligently that it can be said that its negligent performance takes him who did it outside the protection of his employment'." *Elder* v. *Holland,* 208 Va. 15, 19 (1967), quoting *Sayers.* No such allegations are sufficiently made here for the reasons stated *supra* during the analysis of the amended motions for judgment.

3. *The Defendants, Except Blue Cross, Sued in Tort in Their Official Capacity.*

The defendants, except Blue Cross, have all been sued in their "official" or representative capacity as public officials. They are all performing a governmental function in the administration of a public welfare program.

The plaintiff theorizes that, as the result of an agency framework tieing in Blue Cross, liability in tort attaches due to an alleged misrepresentation.

The plaintiff's claim is not sufficient on this ground against these defendants wearing their official hats, either. The acts of the State defendants are acts of the State and the acts of the local defendants are acts of either the State or the counties which they serve and from which they receive their appointment. *E.g.* Code Section 63.1-40. The State is immune from tort liability on account of the acts of its officials or agents. *Eriksen v. Anderson,* 195 Va. 655, 658 (1954). Counties enjoy the same immunity from tort liability. *Fry* v. *County of Albemarle,* 86 Va. 195 (1890). See also *Mann* v. *County Board,* 199 Va. 169 (1957). Cf. *Nelson County* v. *Coleman,* 126 Va. 275 (1919).

4. *The Action Against Blue Cross And Blue Shield of Virginia in Tort.*

*Sayers* v. *Bullar, supra,* is dispositive of the plaintiff's claim on a tort theory against Blue Cross. Paragraph 14 of the amended motion alleges an agency agreement between the State and Blue Cross for the determination of the rate. Misrepresentation is charged against Blue Cross as the result of the alleged publication of an erroneous rate. For the reasons heretofore stated, the conduct of Blue Cross cannot be separated from that of the State. "[T]he immunity of the State from actions for tort extends to State agents . . . where they are acting legally and within the scope of their employment." 180 Va. at 230. No separate tortious wrongdoing by Blue Cross is alleged and the plaintiff's case on this theory against the said defendant must fail.

5. *The Claim Against the Defendants in Their Official Capacity Upon a Contract Theory.*

The gravamen of the claim is the alleged erroneous rate established by Blue Cross and the plaintiff's reliance thereon. The local defendants and the State defendants, all in a representative capacity, are tied together by the allegations that Blue Cross acted as their agent to

the "agreement, contract, or arrangement" between the State and Blue Cross made and entered into so that the State Department could "determine the amount of assistance which should be paid to authorized nursing homes on behalf of OAA and APTD patients . . . ." Paragraph 14 of the amended motion. This is (if it is a claim at all) a pecuniary claim against the State for reliance upon an alleged erroneous State rate published in connection with the discharge of the responsibility placed upon the State Board by Code § 63.1-110 to determine the amount of assistance received by welfare recipients. Code Sections 2.1-223.1, *et seq.*; 8-752, *et seq.*; and 8-38(9).

Assuming but not deciding that this is a claim of the nature covered by the statutes aforesaid (compare *Davis* v. *Marr*, 200 Va. 479 (1959), and *Morris* v. *Tunnel District*, 203 Va. 196 (1962)) and assuming but not deciding that the plaintiff is entitled to relief against the State upon the contract theories advanced (which may be doubtful except as to the amount represented by the difference between the rates on behalf of the Patrick County recipients from April through October, 1971. See Restatement of Contracts, § 45, 90; 28 Am. Jur. 2d *Estoppel and Waiver*, sect. 48, p. 656; 17 Am. Jur. 2d *Contracts*, sects. 37, 45, 62, 89; Anno. Promissory Estoppel, 48 A.L.R.2d 1069), nevertheless, this Court does not have jurisdiction of this claim at this time because the claim has not been presented in accordance with the mandatory provisions of Code § 2.1-223.1.

By virtue of Code § 8-752, the State has consented to be sued upon certain claims. One qualification upon the jurisdiction of This Court in a suit against the State is that the Comptroller or other authorized person must disallow such claim "as is provided for by § 2.1-223.1 or 2.1-223.3." The first statute referred to therein provides, *inter alia*, that the claimant "*shall* present the same . . . ." (emphasis added) to the administrator in charge of the department, etc., responsible for the alleged act or omission or to the Comptroller, if the alleged failure giving rise to the claim cannot be identified with any single department. The latter statute provides for examination of the claim by the administrator and for recommendation thereon to the Comptroller.

In paragraph 29 of the amended motion, the statement is made that "a pecuniary claim" was submitted to the Comptroller, the Department, the Division and the State Board by letter to an "Assistant Attorney General of Virginia, counsel for the Comptroller, the Department, the Division, and the State Board." The plaintiff argues that because of the provisions of Code § 2.1-127 which empower the Attorney General to settle disputes involving the interests of the State under certain circumstances, proper presentment of a claim under § 2.1-223.1 may be made to an Assistant Attorney General.

The obvious answer to this argument is that the plain language of the statute does not permit such procedure. The liberal substantive construction of these statutes dealt with in the cases (e.g. *Stuart, Gov. v. Smith-Courtney Co.*, 123 Va. 231, 235 (1918)) does not authorize the trial court to amend the provisions thereof by judicial fiat and to add procedural language not contained therein. If the General Assembly had meant for pecuniary claims to be presented to the Attorney General's Office, it could have so provided, but it did not. The amended motion for judgment shows on its face that this pecuniary claim against the State has not been processed in accordance with the only statutory provision allowing actions to be so maintained, so it must be dismissed, but without prejudice to the plaintiff however (insofar as this procedural defect is concerned) to bring the action again when the proper statutory procedure has been followed.

6. *Miscellaneous.*

In view of what has been said herein concerning the nonliability in tort of the defendants, it is not necessary for the court to pass on the issue raised by the several pleas that a one-year statute of limitations applies.

The position of the State defendants that the provisions of Code § 63.1-119 and the State Board's action thereunder with reference to the Patrick County recipients dispute has determined this controversy is not well taken. That code section and § 63.1-116 deal with the administrative remedy available to a recipient or applicant who is aggrieved by a local board decision granting, denying,

changing, or discontinuing assistance. The plaintiff's alleged claim under the theories it advances is not a derivative one based on the recipient's claim, but one which is a separate and independent pecuniary contract claim against the State which is not precluded by Section 63.1-119.

## 7. *Conclusion.*

In summary, the court holds that no claim is stated against the Martinsville Council and Manager, so the suit is dismissed as to them on that ground. The plaintiff has no cause of action against the State defendants or the remaining local defendants in tort in their official or individual capacities, nor against Blue Cross in tort, nor against such State and local defendants, individually, in contract, based on the allegations made herein.

Finally, the court holds that if the plaintiff has a claim in contract against the State and local defendants in their representative capacities and Blue Cross, it is actually a pecuniary claim against the State which must be processed according to the mandatory statutory procedure which to date has not been followed.