## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Irby

v.

Mitzi Gill, Ellen Nolan,
and the City of Alexandria

March 21, 1984

Cases Nos. 7410, 7411

By JUDGE WILEY R. WRIGHT, JR.

The plaintiff seeks to recover in her individual capacity and as Administratrix of the Estate of Hendricks Robinson Irby, deceased, against the City of Alexandria and two attendants of the emergency ambulance service operated by the Alexandria Fire Department. The plaintiff's claim is predicated on the failure of the defendants to provide prompt emergency ambulance service to Mr. Irby, which failure, the plaintiff alleges, resulted in his lengthy hospitalization and untimely death. The defendants have filed a plea in bar stating that they are immune from liability by virtue of the doctrine of governmental immunity. The parties have agreed that the Court may consider the discovery depositions and the answers to interrogatories in reaching a decision. During the hearing on the plea in bar, the Court ruled that neither the City nor the individual defendants waived the right to assert governmental immunity when the City procured a policy of liability insurance covering the ambulance service in question.

On the morning of May 2, 1980, the plaintiff's husband, Hendricks Robinson Irby, became ill; and because of his great pain and discomfort, his daughter summoned an emergency ambulance operated by the Alexandria Fire Department. The defendant, Ellen Nolan, a paramedic, was in charge of the ambulance which responded to the call. Mr. Irby was transported to the Alexandria Hospital, and was released later the same morning. During the afternoon of the same day, Mr. Irby's condition worsened and another daughter called the rescue squad to again request that an ambulance be sent to the Irby residence.

An ambulance was dispatched which arrived at the Irby home within about five minutes. The defendant, Mitzi Gill, a paramedic, was in charge on this call and the defendant, Ellen Nolan, accompanied her. En route to the Irby residence, the defendant, Nolan, told the defendant, Gill, that she had taken Mr. Irby to the hospital earlier that day. Upon arrival, the defendants, Gill and Nolan, entered the Irby residence and spoke to the plaintiff and one of her daughters. Neither of the defendants examined Mr. Irby. The defendant, Gill, informed Mrs. Irby and her daughter that they could not take Mr. Irby to the hospital because a Fire Department rule or regulation prohibited her from transporting a patient to the hospital a second time within a twenty-four hour period. When the plaintiff and her daughter persisted in their request that Mr. Irby be taken to the hospital, the defendants, Gill and Nolan, gave them the telephone number of another ambulance service and departed.

After learning that the private ambulance service did not provide service in the City of Alexandria, the Irby family called the Alexandria Fire Department again; whereupon, a battalion chief ordered that an ambulance be dispatched immediately to the Irby residence. This ambulance transported Mr. Irby to the Alexandria Hospital.

The Fire Department order erroneously relied upon by the defendants, Gill and Nolan, provides in pertinent part as follows:

> Effective November 1, 1979, patients with the following complaints may be denied transport by Emergency Medical Services

units and referred to alternate transportation:

1. Patients with external boils.
2. Patients complaining of toothaches.
3. A patient's second call for transport within 24 hours.*

*NOTE: If the patient is obviously ill or injured transport as usual. *Before* denying transport to this patient, EMS personnel must contact the Emergency Department where this patient was previously seen, relate his/her present history, and be guided by the E.D. physician's recommendation. If the E.D. physician advises no transport, his name must be recorded on the ambulance field incident report with circumstances of the incident.

The foregoing order obviously requires a paramedic to examine the patient before deciding not to transport him to the hospital. It also requires that certain conditions be met before a patient is refused transport. None of these conditions were met in this case.

The first question for determination is whether the operation of a fire department emergency ambulance service by a municipality is a governmental or a proprietary function. "In exercising a governmental function, a municipality is merely an agent of the state. It follows, therefore, that, in the exercise of such a function, it has the same immunity from suit as does the state. On the theory that it is an arm of the state government, a municipal corporation has the same immunity from suit at the hands of citizens as does the state." 3 Yokley, *Municipal Corporations*, Sec. 446 (1958). "In Virginia, a municipality acts in a dual capacity, the one governmental and the other proprietary. It is immune from liability for negligence in performing or failing to perform governmental functions. It is not so immune with respect to proprietary functions." *Taylor* v. *Newport News*, 214 Va. 9, 10, 197 S.E.2d 209, 210 (1973).

The test to be applied in determining whether the function is governmental or proprietary is whether the

act is for the common good of all without the element of specific corporate benefit, or pecuniary profit. *Hoggard* v. *Richmond*, 172 Va. 145, 150, 200 S.E. 610, 612 (1939). Although the Virginia Supreme Court has not ruled whether the provision of emergency ambulance service is a governmental or proprietary function, the case of *City of Richmond* v. *Warehouse Corp.*, 148 Va. 60, 138 S.E. 503 (1927), held that firefighting is a governmental function. It has also been held that the provision of health care by a municipal corporation is a governmental function. *City of Richmond* v. *Long*, 58 Va. (17 Gratt.) 375, 94 A.D. 461 (1857).

The plaintiff contends that the $35.00 fee charged by the City for the ambulance service makes it a proprietary function. In my view, the charging of this nominal fee is not determinative of the issue. Furthermore, where it appears that a function is both governmental and proprietary, the governmental aspect predominates. *Taylor, supra; Transportation, Inc.* v. *City of Falls Church*, 219 Va. 1004, 254 S.E.2d 62 (1979).

Although the precise issue in this case has not yet been determined in Virginia, other courts have addressed the question. In *Dugan* v. *Kansas City*, 373 S.W.2d 175 (Mo. App. 1963), the court determined that the operation of an ambulance service in connection with a municipal hospital was a governmental function for which there could be no municipal tort liability. Unfortunately, in this particular case the petition failed to disclose on its face that the City was engaged in a governmental function and the case was remanded to the trial court for further proceedings. In *Brantley* v. *City of Dallas*, 545 S.W.2d 284 (Tex. Civ. App. 1976), the plaintiff sued the City for personal injuries resulting from the negligent failure of the Dallas Fire Department's emergency ambulance service to transport him to a hospital. The Texas Court of Civil Appeals ruled that the operation of an emergency ambulance service by a city is a governmental function. See also *Smith* v. *City of Lexington*, 307 S.W.2d 568 (Ky. 1957).

The Court concludes that the City was performing a governmental function when it provided emergency ambulance service to the plaintiff's decedent. Accord-

ingly, the plea in bar will be sustained insofar as it relates to the defendant, City of Alexandria.

The defendants contend that the plaintiff may not rely upon the internal policies and regulations of the City's emergency ambulance service for the purpose of establishing a standard against which to measure the actions of the defendants, Gill and Nolan. The Court declines to rule at this time whether such rules and regulations will be admissible during the trial of this case. Nonetheless, I have no hesitation in ruling that the Fire Department order upon which the defendants, Gill and Nolan, mistakenly relied in refusing to transport the plaintiff's decedent to the hospital is admissible and may be considered insofar as it relates to the issues raised by the plea in bar.

The next issue for determination is whether the paramedic defendants, Gill and Nolan, are cloaked with the City's sovereign immunity. In Virginia a public employee who commits a tortious act while in the performance of his duties may be held personally liable, even though his employer is immune from liability under the doctrine of governmental immunity. *Crabbe* v. *School Board and Albrite*, 209 Va. 356, 164 S.E.2d 639 (1968); *Elder* v. *Holland*, 208 Va. 15, 155 S.E.2d 369 (1967).

In *Elder* the Virginia Supreme Court held that a state employee may be held liable for intentional torts, and there is no reason to think that the same rule does not apply to employees of a municipal corporation. The evidence in the case at bar reveals that, based on their mistaken reliance on the Fire Department order, the defendants, Gill and Nolan, made a conscious decision not to transport the plaintiff's decedent to the hospital. Nevertheless, this action, or failure to act, was not tantamount to an intentional tort; and these defendants cannot be held answerable for their conduct on the theory that they committed an intentional tort.

A public employee may also be held liable if the act in question is either outside the scope of his authority or performed so negligently that it can be said that its negligent performance takes the employee outside the protection of his employment. *Sayers* v. *Bullar*, 180 Va. 222, 22 S.E.2d 9 (1942). The allegations of the two motions for judgment are insuffi-

cient to justify invoking this principle; and, therefore, the Court will not decide whether the conduct of the defendants, Gill and Nolan, brings them within the ambit of the principle.

Closely related to the rule enunciated in *Sayers* is the principle alluded to in *James v. Jane*, 221 Va. 43, 267 S.E.2d 108 (1980), that a state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected by sovereign immunity. The fact that the defendants, Gill and Nolan, misapplied the Fire Department order is not sufficient in and of itself to warrant a finding of gross negligence; however, when their conduct is viewed in light of the attendant circumstances, the Court finds, for the purposes of the plea in bar, that the defendants were guilty of gross negligence. For this reason, the defendants cannot claim governmental immunity.

The final question for determination is whether the defendants, Gill and Nolan, were performing a ministerial or discretionary duty. "It seems to be well settled that public officers are liable for injury which is the result of their negligence in the performance of duties which do not involve judgment or discretion in their performance but which are purely ministerial." *Wynn v. Gandy*, 170 Va. 590, 595, 197 S.E. 527, 529 (1938).

The gravamen of the plaintiff's complaint is the refusal of the defendants, Gill and Nolan, to transport the plaintiff's decedent to the hospital. They are not being sued because they misdiagnosed the plaintiff's decedent's condition, administered the wrong medication or initiated inappropriate medical procedures. The defendants failed to transport the plaintiff's decedent to the hospital in clear violation of Fire Department policy, and their action, or lack thereof, was ministerial and not discretionary. I recognize that the defendant, Gill, was more culpable than the defendant, Nolan; however, the defendant, Nolan, precipitated and acquiesced in the decision made by the defendant, Gill, and must share the responsibility for the outcome.

For the foregoing reasons, the plea in bar will be overruled as to the defendants, Gill and Nolan.