Joseph Lee GIBSON, Plaintiff,

v.

BOY SCOUTS OF AMERICA,
et al., Defendants.

No. CIV.A. 04–1040.

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 10, 2005.

Raymond Donald Battocchi, Esq., Gabeler Battocchi Griggs & Powell PLLC, P. David Richardson, McLean, VA, for Plaintiff.

Joseph Lee Gibson, McLean, VA, Pro se.

John David McGavin, Trichilo Bancroft McGavin Horvath & Judkins PC, Fairfax, VA, for Defendants.

## MEMORANDUM OPINION

LEE, District Judge.

THIS matter is before the Court on Defendants Boy Scouts of America and National Capital Area Council's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) the Plaintiff's Second Amended Complaint, Revised. This case concerns the revocation of Plaintiff Joseph Lee Gibson's membership in the Boy Scouts of America by the National Capital Area Council, depriving him of his position as Troop Leader, without notice of the basis for his expulsion. The issues before the Court are:

(1) Whether the Court granted Plaintiff Joseph Lee Gibson leave to amend his complaint on October 22, 2004 to include an *ultra vires* count,

(2) Whether Plaintiff Joseph Lee Gibson states a claim for defamation when he alleges that,

(A) Defendant National Capital Area Council, acting through one or more of its agents on January 27, 2003 told Pastor James C. Sprouse, Associate Pastor Kathleene B. Card, John C. Kim, and Dan Moore in the Pastor's Study that Plaintiff Joseph Lee Gibson was "unfit to be a Scoutmaster and in Scouts," when the complaint was filed more than a year after the statement was allegedly made,

(B) "Upon information and belief, similar false and defamatory statements were published" by Defendant National Capital Area Council and its agents to other parents and members of the community before and after revocation of Plaintiff Joseph Lee Gibson's Scouting Membership, and

(C) Defendant Boy Scouts of America, acting through its National Legal Counsel, David K. Park, in a telephone conference call in January 2004 told Plaintiff Joseph Lee Gibson's attorney, P. David Richardson, that his client was not "candid with counsel [Richardson]" about matters that led to the revocation of the Boy Scouts of America membership and that, in fact, there were "other matters involved" that Plaintiff had not disclosed to Richardson, and

(3) Whether Plaintiff Joseph Lee Gibson alleges facts sufficient to support an award of punitive damages.

The Court denies Defendants Boy Scouts of America and National Capital Area Council's motion to dismiss the *ultra vires* count because the Court granted Plaintiff Joseph Lee Gibson leave to amend his complaint on October 22, 2004. Furthermore, the colloquy between the Court and Plaintiff's counsel contemplated the inclusion of an *ultra vires* count in the amended complaint.

The Court grants Defendants Boy Scouts of America and National Capital Area Council's motion to dismiss the first alleged incident of defamation because the statements made in the Pastor's study, although not time barred, are statements of "pure opinion" and are not provably false. Plaintiff Joseph Lee Gibson does not state a claim for defamation as to statements made "upon information and belief" before and after revocation of his scouting membership because he does not allege these statements with sufficient specificity, as required by Virginia law. The Court grants Defendants Boy Scouts of America and National Capital Area Council's motion to dismiss as to the third alleged incident of defamation because communication between two lawyers regarding the conduct of a client of one of the lawyers is absolutely privileged when relevant to an underlying dispute between the parties.

Finally, the Court denies Defendants National Capital Area Council and Boy Scouts of America's motion to dismiss punitive damages because Plaintiff alleges facts sufficient to support an award of punitive damages.

## I. BACKGROUND

In his Second Amended Complaint, Revised, Plaintiff Joseph Lee Gibson ("Plaintiff," "Mr. Gibson") alleges he was a registered adult-volunteer member of the Boy Scouts of America ("BSA") from 1996 to February 7, 2003. Trinity United Methodist Church ("Trinity") is the sponsor or "Chartered Organization" of Boy Scout Troop 869 ("Troop 869"), under the BSA regulations. The Scoutmaster for each troop is recruited and selected by the Troop Committee, subject to the approval of the Chartered Organization. On or about October 1, 1998, the Troop Committee, with Trinity's approval selected Mr. Gibson to serve as Scoutmaster of Troop 869.

Plaintiff alleges that on February 7, 2003, while serving as Troop 869 Scoutmaster, Mr. Gibson received notice by registered letter from Defendant National Capital Area Council ("NCAC") that Defendant NCAC had revoked his membership in the Boy Scouts of America. The letter contained no reason for the revocation. Furthermore, Mr. Gibson was provided with no notice of any allegation against him or with any opportunity to respond to any allegation, or with any information regarding procedures followed in revoking individuals' memberships from the BSA.

Plaintiff further alleges that Defendant NCAC and unknown officials, employees,

or agents ("Richard Roes") of Defendant NCAC conducted some form of a "secret meeting" in which they decided to revoke his membership in the BSA. On March 8, 2003 and May 6, 2003, Mr. Gibson appealed the revocation of his membership in the BSA by letter, to the Northeast Region of the BSA and the National Headquarters of the BSA respectively.

P. David Richardson ("Mr.Richardson"), a member of the Troop Committee and Trinity, as well as parent to a son in Troop 869 agreed to represent Mr. Gibson as his counsel and was retained in July 2003. His representation of Mr. Gibson ceased in February 2004. In July 2003, Mr. Richardson, acting as Mr. Gibson's attorney, sent a letter to Defendant BSA requesting information about Mr. Gibson's appeal from Defendant NCAC's revocation of his membership. Defendant BSA refused to provide any information. Plaintiff alleges, however, that Defendant BSA's National Legal Counsel admitted to Mr. Richardson that Mr. Gibson's expulsion from BSA membership did not involve allegations of youth abuse, but rather involved matters relating to governance of Troop 869 or a "modal difference" as to how Troop 869 should be organized and conducted. The Legal Counsel also stated that such matters are solely within the authority and jurisdiction of the Troop's Chartered organization, Trinity, and the Troop Committee, and that such "modal differences" should not warrant Mr. Gibson's expulsion from the BSA. Plaintiff alleges, however, that Trinity and its Pastor have fully supported Mr. Gibson and Scoutmaster of Troop 869 and favored his return to that position.

According to Plaintiff's allegations, Defendants BSA and NCAC have not disclosed their reasoning for expelling Mr. Gibson to him. Furthermore, Plaintiff alleges that Defendants BSA and John Does convened a secret meeting or review board at a location unknown to Plaintiff without providing any information about the allegations against him to Mr. Gibson, and ratified Defendant NCAC's revocation of Mr. Gibson's membership in the BSA. On December 23, 2003–ten months after his membership from the BSA was revoked–Mr. Gibson received notice of BSA's determination with no explanation for its action.

In addition, Plaintiff alleges that on January 27, 2003, Defendant NCAC, acting through an agent, stated to the Pastor and other members of Trinity that Plaintiff Gibson "is unfit to be Scoutmaster and in Scouts." Subsequently, according to Plaintiff, other members of Trinity, youth and parents of Troop 869 and other members of the community became aware of these statements. Plaintiff further alleges that similar false and defamatory statements were published by Defendants NCAC and/or Richard Roes to other Troop 869 parents and members of the community, both before and after revocation of Mr. Gibson's BSA membership. Furthermore, Mr. Gibson asserts that Defendant BSA affirmed, endorsed, adopted and republished these statements by affirming Defendant NCAC's decision to expel Mr. Gibson.

Also, Plaintiff alleges that Defendant BSA's National Legal Counsel stated to Mr. Richardson in January 2004 that Mr. Gibson was not "candid with counsel [Richardson]" about the matters that led to the revocation and that, in fact, there were "other matters involved" that Mr. Gibson had not disclosed to his lawyer regarding the revocation of BSA membership.

Mr. Gibson alleges that Defendants' actions and statements "constitute an abuse of their position of trust in the Scouting Movement, and were done maliciously, with animosity or ill will toward Plain-

tiff..." He further asserts that his expulsion has caused him substantial damage including preventing his association with family members in the Scouting Movement and others involved with Troop 869, as well as causing him to expend substantial time and funds in connection with challenging the expulsion.

Mr. Gibson alleges three counts in his Second Amended Complaint, Revised, against the defendants: (1) Violation of Rights of Fair Procedure, (2) *Ultra Vires* Action, and (3) Defamation. He seeks injunctive relief and compensatory and punitive damages.

## II. DISCUSSION

### A. Standard of Review

A Federal Rule of Civil Procedure 12(b)(6) motion should not be granted unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. FED. R. CIV. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the Plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). Conclusory allegations regarding the legal effect of the facts alleged need not be accepted. *See Labram v. Havel*, 43 F.3d 918, 921 (4th Cir.1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendants to prepare a fair response. *Conley*, 355 U.S. at 47, 78 S.Ct. 99.

### B. Analysis

*First Alleged Incident of Defamation*

The Court grants Defendants' motion to dismiss Plaintiff's alleged first incident of defamation because, although not time-barred, the allegedly defamatory words are an expression of "pure opinion" and are not provably false, as required by the relevant caselaw. Plaintiff alleges that Defendant NCAC, acting through one or more of its agents on January 27, 2003, told Pastor James C. Sprouse, Associate Pastor Kathleene B. Card, John C. Kim, and Dan Moore in the Pastor's Study that Plaintiff was "unfit to be a Scoutmaster and in Scouts."

*January 27, 2003 Alleged Defamation Not Time Barred*

 Despite Defendants' argument to the contrary, this incident is not time-barred because the District of Columbia's statute of limitations and its "discovery rule" apply, and Mr. Gibson filed his claim within one year of discovering the allegedly defamatory statements. In *Ferens v. John Deere Company*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990), the Supreme Court held that the choice of law of the transferor state will govern following a venue change pursuant to 28 U.S.C. § 1404(a). *Id.* at 519, 110 S.Ct. 1274. It further held that the Mississippi statute of limitations would apply to an action originally filed in United States District Court in Mississippi and then transferred to United States District Court in Pennsylvania, even though Mississippi's choice of law rules required it to apply Pennsylvania substantive law. *Id.* at 526, 110 S.Ct. 1274. The Court noted that Mississippi's choice of law rules did not require it to apply Pennsylvania's statute of limitations in the circumstances of that case. *Id.* at 519–20, 110 S.Ct. 1274. Similarly, this action was originally filed in the United States District Court for the District of

Columbia and then transferred here pursuant to 28 U.S.C. § 1404(a). As detailed in the Court's October 22, 2004 ruling, D.C.'s choice of law rules require this Court to apply Virginia substantive law to the claims in this case. Like *Ferens,* the statute of limitations that applies is determined by the choice of law rules governing in the District of Columbia. The District of Columbia's choice of law rules indicate that its statute of limitations applies to the defamation claim even though Virginia substantive law applies. *See Wilson v. Prudential Financial,* 332 F.Supp.2d 83, 91 n. 4 (D.D.C.2004).

■ This alleged incident of defamation is not time barred because of the District of Columbia's "discovery rule." Although D.C.'s statute of limitations jurisprudence for defamation claims usually runs for one year from the time of publication, the District of Columbia applies the "discovery rule" to determine when a tort action accrues. *See* D.C.Code § 12–301(4); *see also Goldman v. Bequai,* 19 F.3d 666, 671–2 (D.C.Cir.1994). This rule states that "a cause of action accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Goldman,* 19 F.3d at 672 (citing *Knight v. Furlow,* 553 A.2d 1232, 1234 (D.C.1989)) (internal quotations omitted). Since Plaintiff did not know about the statements made to the Pastor and other members of his community until March 26, 2003, and had no knowledge of, nor should he have had knowledge of, the existence of the allegedly defamatory statements, their cause in fact, or evidence of wrongdoing, and he filed his claim within one year of this date, his defamation claim is timely filed.

### January 27, 2003 Statements Are "Pure Opinion"

■ Nevertheless, the Court grants Defendants' motion to dismiss on the basis that this statement was "pure opinion" and therefore cannot form the basis of a defamation claim. While a statement of fact may be the basis for a defamation claim, a statement of pure opinion cannot. *See Williams v. Garraghty,* 249 Va. 224, 233, 455 S.E.2d 209 (1995) (finding that while the defendant's perception is protected speech, "the statements supporting her opinion are factual"). The Supreme Court of Virginia has stated that to comply with United States Constitution requirements, "speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action." *Yeagle v. Collegiate Times,* 255 Va. 293, 497 S.E.2d 136, 137 (1998). The Court holds that the statement that Mr. Gibson was "unfit to be a Scoutmaster and in Scouts" does not contain a provably false factual connotation. Unlike the petitioner in *Milkovich v. Lorain Journal Company,* 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), who was accused of lying under oath, being "fit" or not to be a Scoutmaster or a Scout is not provably false. Consequently, the Court finds that these allegedly defamatory words are merely the expression of the speaker's opinion, and do not state a claim of defamation for which relief can be granted.

### Second Alleged Incident of Defamation

■ Plaintiff's second alleged incident of defamation does not state a claim for defamation because it is not pled with sufficient specificity, as required by Virginia law. Plaintiff's second alleged incident of defamation is: "[u]pon information and belief, similar false and defamatory state-

ments [regarding unfitness to be a Scout or Scoutmaster] were published" by Defendant NCAC and agents of NCAC to other parents and members of the community before and after revocation of Plaintiff's scouting membership. Under Virginia law, causes of action for defamation require, "that the exact words spoken or written must be set out in the declaration...that is, [the pleading] must purport to give the exact words. Words equivalent or of similar import are not sufficient." *Federal Land Bank of Baltimore v. Birchfield,* 173 Va. 200, 3 S.E.2d 405, 410 (1939). Because Virginia law requires pleading with specificity as to the words allegedly used to defame a person, and Plaintiff does not allege these words with specificity, alleging only that they are "similar" to those of the first alleged incident, the Court grants Defendant's motion to dismiss as to the second alleged incident of defamation.

*Third Alleged Incident of Defamation*

■ The Court grants Defendant's motion to dismiss as to the third alleged incident of defamation because communication between two lawyers regarding the conduct of a client of one of the lawyers is absolutely privileged when relevant to an underlying dispute between the parties. Plaintiff alleges that Defendant Boy Scouts of America acting through its National Legal Counsel David K. Park, in a telephone conference call in January 2004 told Plaintiff's counsel P. David Richardson in his office in Washington D.C. that Plaintiff was not "candid with counsel [Richardson] about matters that led to the revocation" and that, in fact, there were "other matters involved" that Plaintiff had not disclosed to Richardson. In *Katz v. Odin, Feldman & Pittleman,* 332 F.Supp.2d 909 (E.D.Va.2004), Judge Ellis held that statements made in connection with an arbitration proceeding were privileged and could not be used as the basis of a defamation

claim. *Id.* at 919. He stated that the "sensible rule" that words spoken or written in a judicial or quasi-judicial proceeding are absolutely privileged when relevant to the subject matter of the proceeding, "ensur[es] free and full disclosure of information and exchange of views by parties to a dispute. The interest that parties not be deterred or chilled by the threat of a defamation suit outweighs an individuals' [*sic* ] interest in preserving his reputation untarnished." *Id.* Judge Ellis noted that this "rule is broad and comprehensive" under Virginia law. *Id.*

Although the statement made to Mr. Richardson occurred in January 2004, before the filing of a formal complaint in the United States District Court for the District of Columbia on February 9, 2004, and it was not made in the context of a formal arbitration proceeding, the Court holds that the policy reasons described by Judge Ellis for finding an absolute privilege are applicable here—where two lawyers are discussing a matter relevant to an underlying dispute between their clients. Even if no judicial or quasi-judicial procedure was underway, as Plaintiff alleges in his complaint, the communication that took place between plaintiff's and defendants' counsel likely occurred in anticipation of litigation. Mr. Gibson learned that the Boy Scouts had denied his appeal in a letter dated December 17, 2003 according to his Second Declaration. Mr. Richardson learned that Mr. Gibson was expelled from the Scouting Movement in January 2004, according to Mr. Richardson's supplemental affidavit. The conversation between Defense counsel and Plaintiff's counsel also occurred in January 2004. Although Mr. Gibson's Second Declaration states that he did not decide to file litigation until February 2004, it also states that prior to receiving BSA's letter dated December 17, 2003, he had not authorized his counsel to conduct

research or prepare for litigation and had done neither himself. At some point between December 17, 2003 and February 9, 2004, Mr. Gibson and his counsel had to engage in some kind of an analysis about whether litigation was worthwhile, even if the final decision to pursue litigation was not made until February. Consequently, the statement about Mr. Gibson possibly withholding information from his attorney likely was made in a discussion that anticipated litigation.

Furthermore, in the interest of resolving disputes that may not yet have taken the form of formal complaints filed in court, it is essential that attorneys be able to discuss their assessments of their clients' claims without fear of defamation lawsuits. Lawyers frequently discuss the strengths of their clients' claims in deciding whether to file a lawsuit in the first place. To prevent lawyers from having such discussions for fear of a defamation lawsuit would prevent the resolution of claims before they get to court and would hinder open communication between counsel. Making no judgment at all about the truthfulness of Defendants' counsel's statement, the Court holds that communications between lawyers regarding a matter relevant to an underlying dispute between their clients is absolutely privileged communication.

*Punitive Damages*

 The Court denies Defendants' motion to dismiss Plaintiff's claim for punitive damages because Plaintiff alleges facts sufficient to sustain a claim for punitive damages. Punitive damages may be recovered in "tort claims containing certain essential elements of fraudulent, false, or malicious states of mind." *Social Consultants International v. Haskell,* No. 95–12–A, 1995 U.S.Dist. LEXIS 21423 at *11 (E.D.Va.1995). Malice includes "behavior actuated by motives of personal spite, or

ill-will." *Gazette v. Harris,* 229 Va. 1, 325 S.E.2d 713, 727 (1985). Plaintiff alleges that by revoking his membership in the Scouting Movement, Defendants "acted intentionally, maliciously, with reckless disregard for the consequences, in misuse of their position of trust," etc. Second Amended Complaint, Revised ¶ 60; *see also* ¶ 6 (stating that defendants acted "with animosity or ill will toward Plaintiff"). In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the Plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). The Court finds that Plaintiff properly pleads malice sufficiently to survive Defendants' motion to dismiss punitive damages pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III. CONCLUSION

The Court denies Defendant's motion to dismiss the *ultra vires* count because the Court granted Defendant leave to file an amended complaint. The Court grants Defendant's motion to dismiss the defamation claim in its entirety because Plaintiff does not state a claim for defamation as to (a) the statements made in the Pastor's study because they are not provably false, as required by Virginia law, (b) the statements made "upon information and belief" before and after revocation of his scouting membership because he does not allege these statements with sufficient specificity, as required by Virginia law, and (c) the words exchanged between the parties' lawyers regarding Plaintiff's candor with his own lawyer because communication between two lawyers regarding the conduct of a client of one of the lawyers is absolutely privileged when relevant to an underlying dispute between the parties. In addition, the Court denies Plaintiff's mo-

tion to dismiss Plaintiff's claim for punitive damages because Plaintiff alleges facts sufficient to support an award of punitive damages.

For the foregoing reasons, it is hereby

ORDERED that Defendants Boy Scouts of America and National Capital Area Council's Motion to Dismiss is GRANTED as to the defamation claim in its entirety, and DENIED as to punitive damages.

The Clerk is directed to forward a copy of this Order to counsel of record.